JOHN DONNELLY *vs.* ELLEN STRONG.

Middlesex.    November 23, 1899. — January 4, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Nullity of Marriage — Fraud.*

A woman, whose husband, by whom she had a child, had procured a divorce from her in another State, became a *bona fide* resident of this Commonwealth, where she became pregnant by another man. In a conversation between them respecting marriage, she represented to him that she was unmarried, that she had never been married, that she had never before been in the family way, and that she had never had sexual intercourse with any one other than him. She gave birth to a child, of which he acknowledged the paternity, and afterwards they were married here. Subsequently he learned of the earlier marriage and that the offspring was living, but, upon being told that the first husband had died before her second marriage, he continued to cohabit with her. Later, upon learning that the first husband was living and had been divorced from his wife, he ceased to cohabit with her, and brought a libel for a sentence of nullity of the marriage. *Held*, that no such fraud had been practised upon him as to entitle him to a decree.

LIBEL, for a sentence of nullity of marriage. Trial in the Superior Court, before *Aiken*, J., who allowed a bill of exceptions, in substance as follows.

The libellant offered to prove the following facts: He and

the libellee first became acquainted in Lowell in the summer of 1883, and after some months their relations became such that in March, 1884, she became pregnant by him. After this was known there was a conversation between them respecting marriage, the libellee representing to the libellant that she was unmarried, that she had never been married, that she had never before been in the family way, and that she had never had sexual intercourse with any one other than the libellant. He thereupon expressed himself as willing to marry her, provided the facts were as represented by her.

He had no sexual intercourse with her after learning of her pregnancy until after his marriage to her, but provided a home for her at his sister's, where she gave birth to the child, he himself residing elsewhere. In March, 1886, they were married in Lowell under the rites of the Catholic church, of which both were members, she then informing the officiating clergyman, in the libellant's presence, that it was her first marriage, which he then believed. In fact, she had married in this Commonwealth, in 1872, a man named Strong, by whom she had a child, and Strong and the child were at the time of the marriage to the libellant both living, which she well knew. Had the libellant then known of this, he would not have married her, nor would the officiating clergyman have performed the ceremony, if he had known it.

Strong, in 1880, obtained a divorce from the libellee in the Supreme Judicial Court of the State of Maine, which had jurisdiction of the parties and the cause, upon the ground of her desertion of him. By the laws of that State the libellee could not have legally married the libellant when she did without first securing special permission from the court granting the divorce, and she never sought nor obtained such permission.

Some months after the marriage with the libellant he learned that there had been an earlier marriage, and that a child, the result of it, was then living, but was told by both the libellee and the child that the first husband had died previously to her marriage to the libellant, and upon that information he made no effort to separate from the libellee. Later, and immediately upon learning that the first husband was still living, and that the libellee was a divorced woman, and had never obtained per-

mission to marry again, he brought this libel and ceased cohabitation with her. The child born to the libellee by the libellant prior to his marriage to her is still living, and he acknowledges his paternity thereof. No question was made concerning the libellee being a resident of this Commonwealth in good faith in March, 1886.

Upon the foregoing offer of proof, the libellee asked the judge to rule that as matter of law such proof, if made, would not maintain the libel; and that the same be dismissed.

The judge so ruled, and dismissed the libel; and the libellant alleged exceptions.

*N. D. Pratt*, for the libellant.

*P. A. Fay*, for the libellee.

HAMMOND, J. The libellant concedes that at the time of the marriage he was a *bona fide* resident of this State, and that the marriage was valid here; and there is nothing in the offer of proof to show that it would not be considered valid everywhere else, including the State of Maine. *West Cambridge* v. *Lexington*, 1 Pick. 506. *Commonwealth* v. *Lane*, 113 Mass. 458, 464. *Cummington* v. *Belchertown*, 149 Mass. 223, 226, and cases cited.

But the contention is that the libellant was induced to contract the marriage by the false and fraudulent representations of the libellee " that she was unmarried, that she had never been married, that she had never before been in the family way, and that she had never had sexual intercourse with any one other than the libellant."

So far as these representations related to her previous chastity, they form no ground for decree of nullity, if for no other reason than that the libellant himself knew that at the time they were made she was unchaste, and was thereby put upon his guard; and this would be so even if her prior sexual intercourse had been illicit. *Foss* v. *Foss*, 12 Allen, 26. *Crehore* v. *Crehore*, 97 Mass. 330. *Smith* v. *Smith*, 171 Mass. 404, 406. It is to be remarked, however, that, while the representation as to other sexual intercourse was not true, still, so far as appears from the offer of proof, that intercourse being with a person who was for the time her husband was perfectly legitimate. Indeed, there is nothing whatever to show that there was any stain upon this woman's

character for virtue except that made by her association with the libellant, or that any other person than he is responsible for her fall.

The kind of fraud necessary to form a basis for a decree of nullity of a marriage which has been consummated has been so fully defined in comparatively recent decisions of this court that it seems unnecessary here to do more than to refer to some of the cases. See *Reynolds* v. *Reynolds*, 3 Allen, 605 ; *Foss* v. *Foss*, 12 Allen, 26 ; *Crehore* v. *Crehore*, 97 Mass. 330 ; *Smith* v. *Smith*, 171 Mass. 404, 406. As stated by Bigelow, C. J., in *Reynolds* v. *Reynolds*, a marriage having been consummated, " nothing can then avoid it which does not amount to a fraud in the *essentialia* of the marriage relation."

In this case the libellee at the time of the marriage was free to enter into the contract in this State, and the contract valid here was valid everywhere. Her previous marriage had nothing whatever to do with her ability to enter into the contract, nor did the marriage impose upon the husband against his will any obligation with reference to his stepchild, and besides, he continued his conjugal relations after he knew of her existence. Bound by no tie inconsistent with the duties she was about to assume as a wife, the libellee stood at the altar, stained, it is true, but by him who led her there ; and she went to the marriage bed bearing no spurious offspring, but apt for the procreation of lawful issue.

She had concealed from his knowledge no fact in her past which in any way whatever interfered with the essentials of the marriage state ; and for aught that appears she was to him a true and faithful wife.

*Exceptions overruled.*