## LENA BOEHS

*v.*

## WILLIAM HANGER.

[Argued October Term, 1904. Decided February 7th, 1905.]

1. The jurisdiction of the court of chancery to decree the annulment of a marriage on the ground of fraud is confined to cases of fraud which affect the essentials of marriage, and will not be exercised if a decree of annulment will violate public policy.

2. The parties to this suit were legally married and lived together as husband and wife for about one year, when complainant left defendant because he failed to support her. Before the marriage defendant falsely stated to complainant and to the justice of the peace who performed the ceremony that he had never been previously married. In fact, he had been married previously and had been divorced from his wife, who was still living.—*Held*, that the false statement did not affect any essential of marriage, for the parties were competent to marry; their cohabitation, when married, was within the law, and children, if begotten of the marriage, would be legitimate.

3. Complainant is a member of a church, one of the tenets of which is that a marriage cannot be dissolved except by the death of one of the contracting parties, and that a marriage with a divorced person, the other party to the divorce being yet living, is invalid and cohabitation therein is sin.—*Held*, that although complainant may have been misled by the false statement and induced to infer that defendant could not be a divorced person, the marriage, being valid by the law of the land, should not be annulled because it is claimed to be invalid by the law of a church.

On bill for annulment of marriage.

*Mr. William J. Kearns*, for the complainant.

MAGIE, CHANCELLOR.

By her bill complainant seeks a decree annulling the marriage between her and the defendant.

The defendant not having interposed any defence, a reference of the matter to a special master was made under rule 165*b*.

The special master has sent up the proofs taken before him, with his opinion that said proofs are insufficient to justify a decree declaring the marriage between the parties null and void. The cause has been brought to hearing upon the bill, proofs and report, to which exceptions were filed.

It is now argued that the master's opinion was erroneous, and that upon the proofs the decree sought ought to be made.

It is settled in this state that the court of chancery, under its general power to annul fraudulent contracts, has jurisdiction to annul a contract of marriage for fraud. *Carris* v. *Carris, 24 N. J. Eq. (9 C. E. Gr.) 516; Crane* v. *Crane, 62 N. J. Eq. (17 Dick.) 21,* and cases cited. But it is not for every fraud perpetrated in respect to this peculiar relation that a court should interfere to nullify it. In the prevailing opinion of Mr. Justice Bedle in the *Carris Case,* the court of errors and appeals lays down the rule that the marital relation will not be annulled for any fraud except that which operates upon the very essentials of marriage, and never when the effect of its annulment is against sound public policy.

The facts proved and relied on to justify and require a decree declaring the marriage null and void are the following: The parties were legally married on September 29th, 1901, and lived together as husband and wife until September, 1902, when complainant left defendant because he failed to support her. Afterward complainant discovered that defendant had been previously married to another woman, from whom he had been divorced on August 13th, 1901. Although the decree of divorce left defendant legally competent to enter into the marriage contract with complainant, and although it is conceded that they did legally contract and live together in marriage, it is contended that complainant was induced to enter into that contract by deception and fraud. She testifies that defendant, before their marriage, asserted to her that he had never been married, and she is corroborated by the justice of the peace who performed the ceremony, who testifies that defendant then declared to him that the marriage about to take place was his first marriage.

It is obvious, however, that the false statement respecting

defendant's previous marriage did not in any respect touch or affect any essential of the marriage entered into. The parties were both competent to marry; their cohabitation, when married, was within the law, and children begotten thereof would be legitimate.

But complainant's insistment is that the false statement operated as a fraud upon her, in that it justified an inference that he was not a divorced person. Her proofs show that she is a member of a religious body, one of the tenets of which is that marriage, once contracted, cannot be dissolved except by the death of one of the contracting parties, and that a marriage with a person divorced by law and not by death is invalid, and cohabitation between persons thus married is sin. She asserts that if she had been informed of the truth which was concealed by the false statement, she would not have entered into the marriage relation with defendant.

The case is lacking of either allegation or proof that defendant knew of the law of the church in question, or of complainant's recognition of its obligation. Therefore, no consideration need be given as to whether the relief sought could be afforded when such a false statement was made with the intent to induce a disobedience of a known obligation prohibiting the making of such a contract.

The case presented by the bill and proofs required the report of the master. To hold otherwise would elevate the law of the individual or of the church above the law of the land, which alone the courts are bound to administer.

It results that the report must be confirmed and the bill must be dismissed.