## LIDA T. ALLEN

*v.*

## CHARLES S. ALLEN.

[Submitted April 14th, 1915. Determined September 15th, 1915.]

1. In a suit to annul a marriage on account of defendant's conceal-ment of a taint of hereditary insanity, hearsay evidence as to his earlier mental condition and that of his family was inadmissible.

2. Where the defendant husband at the time of the marriage was sane and capable of entering into the marriage relation, the fact that he concealed that he was afflicted with hereditary insanity is no ground for the annulment of a marriage, the husband being capable at the time of fulfilling all marital duties, and the taint not being transmissible to the wife, for fraud will not warrant annulment of a marriage, unless of the most serious character.

3. That the defendant husband, who was a physician, confessed to his wife after marriage that he had concealed from her his belief that he was affected with a taint of hereditary insanity, does not establish such fact.

On bill for annulment of marriage.

*Messrs. Wescott & Weaver,* for the complainant.

*Mr. G. Dore Cogswell,* for the defendant.

LEAMING, V. C.

By the bill filed herein complainant seeks a decree annulling her marriage to defendant on the ground that at the time of her marriage defendant knew that he was afflicted with a taint of hereditary insanity, and with that knowledge stealthfully concealed the fact from complainant. Defendant is now insane and an answer has accordingly been filed and a defence made in his behalf by a guardian *ad litem* appointed for that purpose.

The evidence discloses that the parties were married in July, 1895. The husband was then a graduate physician and thirty-one years of age; the wife was twenty; they each lived with

their parents and had been reared on nearby farms. About two years after their marriage the wife became heavy with child, and without knowledge on the part of the wife touching the husband's purpose he performed on her an abortion. This occasioned a confession by the husband that his determined avoidance of offspring was made necessary by reason of his having inherited insanity, and that he had concealed his affliction at the time of his marriage, knowing that its disclosure would have prevented the marriage. It is this intentional concealment by the husband at the time of his marriage of the fact that he was afflicted with hereditary insanity which is now urged as such a fraudulent procurement of complainant's consent to marriage as will at this time justify a decree in behalf of the wife annulling the marriage.

The abortion and confession above referred to were established by the testimony of complainant and complainant's sister, who was present at the time of the confession. These events occurred in November, 1897. Shortly thereafter the husband determined to enter the practice of his chosen profession, and for some four years thereafter was engaged in the practice of medicine. At the end of that period—in 1901—his mental condition became such as to necessitate his confinement in an insane hospital; since then he has grown worse and now appears to be permanently insane. During the four years intervening between the husband's disclosure of his condition to his wife, and the time of his commitment to an asylum, during which time the husband was engaged in the practice of medicine, his wife resided with him as a wife, but her statement is that by mutual purpose no sexual intercourse occurred between them.

There is no doubt of the husband's mental capacity to marry at the time of his marriage. Nor does there seem to be any reason to doubt that about two years thereafter he made the confession already referred to. It must, therefore, be accepted as a fact that at the time of his marriage he believed that he was afflicted with hereditary insanity and concealed his belief because of the fear that its disclosure would have defeated his purpose. Nor is there any doubt that six years after his marriage he became violently insane and has since remained in that condi-

tion.   But aside from the husband's manifest belief that he had inherited insanity, and that the unfortunate inheritance would have fallen to his offspring, there is little evidence to establish the fact.   Certain hearsay testimony which was introduced touching the husband's earlier mental condition and touching his father's condition must, of course, be excluded.   There is evidence that a maternal uncle and a paternal cousin of defendant have been insane; but no evidence establishing the fact that any lineal ancestor of defendant has at any time been insane.   The only evidence that defendant's insanity is hereditary, aside from his own belief, is to be found in the opinion of Dr. Cort to that effect.   That opinion appears to be chiefly based upon the present symptoms of defendant and the circumstance of insane collateral relatives.   On what defendant based his belief that he was infected with hereditary insanity does not appear.

In *Carris* v. *Carris, 24 N. J. Eq. 516,* our court of errors and appeals determined that this court has inherent jurisdiction to annul a marriage for fraud.   It is there held, however, that, unlike ordinary contracts induced by fraud, in voidable as distinguished from void contracts of marriage (that is, contracts in which the parties have actually contracted marriage with a purpose, desire and capacity to marry as distinguished from contracts of empty form without mutual intent or capacity to marry, such as duress, marriage in jest, misapprehension of the party, and mental incapacity to contract), fraud is insufficient to annul the marriage unless three elements are found to exist— *first,* the fraud must be extraordinary or extreme in kind or degree; *second,* it must relate to the essentials of the marriage relation; *third,* it shall not, in any circumstance, avoid the marriage contract against sound considerations of public policy. It will be readily conceded that neither of these three requirements, in manner stated, is sufficiently inflexible or definite to be easily applied to a concrete case other than the one then before the court.   It is, however, there explicitly pointed out that false representations in regard to family, fortune or external conditions, or even antenuptial incontinence, are not sufficient grounds for a decree of annulment, whereas fraudulent concealment of pregnancy at the time of marriage, the husband being innocent,

is there held sufficient, providing there has been no acquiescence upon the part of the husband after discovery of the fraud. As incontinence was there stated to be insufficient, it necessarily follows that the basis of the decree was pregnancy. That was declared by the court to relate to the essentials of the marriage relation because it rendered the wife, for the time being, incapable of being impregnated by her husband; the necessity which the fraud imposed upon the husband of accepting or repudiating issue not his own was also held to render the decree of annulment consistent with public policy. In the later case of *Crane* v. *Crane, 62 N. J. Eq. 21,* a decree of annulment was made based upon the husband's concealment of his syphilitic condition at the time of his marriage. In that case the basis of the conclusion of the learned chancellor appears to have been that the disease named necessarily or appropriately terminates the marriage relation because that relation could not continue except at the risk of infection by the wife. In considering what misrepresentations can be deemed to affect an essential of the marriage relation, the learned chancellor (at *p. 26* of the reported case), says: "Misrepresentation as to freedom from disease in general or concealment of the existence of a disease, although one in common apprehension, communicable and transmissible to offspring, cannot, in my judgment, be so regarded. They fall within the line of false representations as to family, fortune or external conditions, declared by Mr. Justice Bedle, in *Carris* v. *Carris, supra,* to be insufficient to justify the annulment of marriage. As to such and like matters the parties take each other for better or for worse. *1 Bish. Mar., D. & S.* § *459."* From the above quotation it is obvious that in the opinion of that learned chancellor the ground upon which the bill in the present case seeks a decree is insufficient. The adjudicated cases in other states afford little aid. In a recent case in the supreme court of New York—*Sobol* v. *Sobol,* reported in *N. Y. Law Jour.* of December 7th, 1914 (at *p. 927*)—tuberculosis, concealed at marriage, was held to afford ground for annulment. While the opinion in that case refers to the effect of the disease upon offspring, the primary ground of the decision appears to be that the danger of infection from tuberculosis, like

syphilis, renders contact dangerous and accordingly affects an essential of the marriage relation. A somewhat extended review of earlier cases will be found in *Lyon* v. *Lyon, 230 Ill. 366.*

I think it will be found that in the absence of statutes specifically authorizing a decree of annulment, or declaring the marriage unlawful at the time it was contracted, no satisfactory authority exists to support the view that a marriage contract, voidable only, can be annulled by a court of equity for fraudulent concealment by a party touching his or her physical condition except in the extreme instances already referred to of disease of either party of a nature to render contact seriously dangerous to the other or pregnancy of the wife. The importance of healthful offspring cannot be overestimated, but that consideration appropriately belongs to the legislature.

In cases of impotency, involving as they do total failure of issue, this court has refused relief by either decree of annulment or dissolution of the marriage contract until our legislature authorized a divorce on that ground. *Anon., 24 N. J. Eq. 19.*

But I am convinced that the relief here sought must be denied, in any event for want of adequate proof of the fact that defendant was at the time of his marriage afflicted with a taint of insanity which would have been inherited by his offspring. Defendant's confession of his belief to that effect cannot be properly accepted as sufficient to establish the fact, and the basis for Dr. Cort's opinion in the matter is too uncertain. The fact must be determined with reasonable certainty to justify a decree of that nature.

I feel obliged to advise a decree dismissing the bill.