MILDRED A. CHIPMAN *vs.* CHARLES J. JOHNSTON.

Suffolk. January 13, 1921. — March 2, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Marriage and Divorce,* Annulment of marriage. *Fraud.*

False representations by a man to a woman as to his name, place of residence and situation in life, made with a view fraudulently to procure her marriage to him, will not warrant the annulment of a marriage brought about by such representations, where it does not appear that the man impersonated another or that the woman was mistaken as to his identity.

LIBEL under R. L. c. 151, § 11, filed on September 23, 1919, for the annulment of a marriage.

The libel was heard in the Superior Court by *Fox,* J. Material facts found by the judge are described in the opinion. The judge ruled "as a matter of law that the fraud shown does not affect the essentials of the marriage relation and that, therefore, the petition cannot be maintained;" and reported the case to this court for determination.

*E. I. Smith,* for the libellant.

No counsel appeared for the libellee.

RUGG, C. J. This is a libel for the annulment of a marriage. The relevant facts as found and reported by the Superior Court

judge are that the libellant went through a form of marriage with a man then calling himself Charles J. Johnston, whose true name was unknown, supposed to be of Fairbanks, Alaska, at Spokane in the State of Washington on the fourth day of December, A. D. 1918, and thereafter they lived together as husband and wife at said Spokane for seven days and at St. Maries in the State of Idaho for two days, and since that time she has never seen nor heard from him; that the libellee in bad faith and without any intention of observing his marriage vows, deliberately assumed a false name for the purpose of concealing his identity so that he might go through the form of marriage with the libellant, temporarily cohabit with her and then disappear without leaving any trace by which he might be located; that for that purpose he further represented that he made his home at Fairbanks, Alaska, with his niece and her husband, named Newman; that he had been engaged in the mining business and that he had money on deposit in the First National Bank at Spokane, whereas in fact none of these representations were true; that he was unknown in Fairbanks, Alaska; that he had no relatives there by the name of Newman; that he was not engaged in any business as so represented; that he had no money on deposit at the First National Bank in Spokane and was not known there; and that the libellant was induced to go through said form of marriage with the libellee by his said false and fraudulent representations as to his identity and situation in life; that the libellant was utterly deserted and left destitute by the libellee at said St. Maries on or about the thirteenth day of December, A. D. 1918; and that, after diligent inquiry and search, she has no knowledge of the true name and identity, or of the present whereabouts of the libellee.

It is not every error or mistake into which an innocent party to a marriage may fall, even though induced by disingenuous or false statements, silences or practices, which affords ground for its annulment. Manifestly wicked deception was perpetrated upon the libellant. That alone is not enough to vitiate a marriage duly solemnized and fully consummated. Fraud, in order that it be ground for annulment, must go to the essentials of the marriage relation. The law in this particular was succinctly stated by Chief Justice Bigelow in the leading case of *Reynolds* v.

*Reynolds*, 3 Allen, 605, at page 607, in these words: "In the absence of force or duress, and where there is no mistake as to the identity of the person, any error or misapprehension as to personal traits or attributes, or concerning the position or circumstances in life of a party, is deemed wholly immaterial, and furnishes no good cause for divorce. . . . These are accidental qualities, which do not constitute the essential and material elements on which the marriage relation rests."

The libellant was not mistaken in the identity of the libellee. He was the human being whom she intended to marry. He did not impersonate another. Even though she was deluded as to his name and place of residence, that did not affect his personality. His representations as to relatives in another part of the country merely concerned his social standing. It does not appear that these feigned relatives were known to the libellant. Doubtless the false representations of the libellee would have justified the libellant in breaking an agreement to marry and in refusing to execute the contract if she had ascertained the facts in time. *Van Houten* v. *Morse*, 162 Mass. 414. After the ceremony of marriage and the subsequent cohabitation, brief though it was, a change of status took place affecting both the parties and the community. A relation thereby sprang into existence which for important reasons the law recognizes and takes under its protection. It is a relation which cannot be lightly disregarded. It might affect the legitimacy of the posterity of the parties. In this particular the case is quite distinguishable in its facts from *Smith* v. *Smith*, 171 Mass. 404, and *Anders* v. *Anders*, 224 Mass. 438. In the main it resembles, in respect to the governing principle, *Foss* v. *Foss*, 12 Allen, 26, *Crehore* v. *Crehore*, 97 Mass. 330, *Vondal* v. *Vondal*, 175 Mass. 383, and *Commonwealth* v. *Shaman*, 223 Mass. 62. See *Napier* v. *Napier*, [1915] P. 184.

The validity of the marriage has been upheld where one of the parties has assumed a false name in *Meyer* v. *Meyer*, 7 Ohio Dec. (Reprint) 627, *The King* v. *Burton-upon-Trent*, 3 M. & S. 537, and *The King* v. *Billingshurst*, 3 M. & S. 250. Decisions to the contrary collected in the notes to the latter case at page 259 *et seq.*, appear to rest upon the terms of the marriage act of England.

The rule is stated in *Trask* v. *Trask*, 114 Maine, 60, to be that "no fraud will avoid a marriage which does not go to the very

essence of the contract, and which is not in its nature such a thing as either would prevent the party entering into the marriage relation, or, having entered into it, would preclude performance of the duties which the law and custom impose upon husband or wife as a party to the contract." The strict rule has been somewhat relaxed in other jurisdictions either by statute or by judicial decision. See, for example, *Davis* v. *Davis,* 90 N. J. Eq. 158; *Parsons* v. *Parsons,* 68 Vt. 95, *Gatto* v. *Gatto,* 79 N. H. 177. It is unnecessary to examine those decisions because we are of opinion that under principles heretofore declared by this court the libellant can be given no relief in this proceeding. See in this connection *Day* v. *Day,* 236 Mass. 362.

*Libel dismissed.*