WELLS, Executor, Respondent, vs. TALHAM, Appellant.

*March 8—June 5, 1923.*

*Marriage: Annulment on grounds of fraud: Failure to fulfil promise to have subsequent religious ceremony: False representation that woman was not divorced.*

1. Under sub. (4), sec. 2351, Stats., a marriage may be annulled for fraud, force, or coercion unless it has been confirmed by the acts of the injured party.

2. Although marriage is purely a civil contract, false representations which would set aside ordinary civil contracts are not necessarily sufficient to avoid a marriage contract.

3. False representations that a party has never been divorced will not warrant annulment of a marriage, as a divorce does not prevent entering into a new marriage relation or the performance of all of its duties.

4. A complaint which alleged that an elderly and somewhat feeble Catholic man who received considerable consolation and comfort from his religion entered into a marriage agreement with a Protestant woman who falsely represented that she was a widow and had never been divorced when she had been and knew she had a former husband living and knew it was against the canons of the Roman Catholic Church for him to marry her under the circumstances, and that he might be excommunicated for doing so, and demanded annulment of the marriage, does not state a cause of action, as it does not appear that the defendant is not able and willing to perform all the duties of the marriage contract.

5. On demurrer it must be assumed that the allegations of the complaint are true.

APPEAL from an order of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Upham, Black, Russell & Richardson,* and oral argument by *Perry J. Stearns,* all of Milwaukee.

For the respondent there was a brief by *Hoyt, Bender, McIntyre & Hoyt,* attorneys, and *Clarence G. Ehrle,* of counsel, all of Milwaukee, and oral argument by *E. L. McIntyre.*

JONES, J.   This is a suit to declare a marriage void on the grounds of fraud.   The complaint alleged:

"That plaintiff is seventy-eight years of age and a resident of Milwaukee county, Wisconsin; that defendant is upwards of sixty-four years of age and resides in Wakefield, Massachusetts.

"That on the 7th day of February, 1921, at the city of Wakefield, Massachusetts, the plaintiff was in form married to the defendant, and that there is no issue of said marriage; that prior to and at the time of said marriage plaintiff was very infirm in physical health.

"That at the time of and for many years prior to such marriage plaintiff was and still is a member of the Roman Catholic Church; that one of the canons or rules of said church prohibits the marriage of any member thereof to any person who had been divorced and whose divorced spouse is living, under penalty of excommunication from said church.

"That defendant, prior to promising to marry the plaintiff and to her marriage to the plaintiff, knew the canon of the Roman Catholic Church above set forth, and knew that plaintiff was a member of said church, and knew that plaintiff would not have consented to marry the defendant had he known she was a divorced woman and that her divorced husband was living.

"That defendant had been married previously to one Clemons and had been divorced from said Clemons prior to her marriage to plaintiff, and that said Clemons was living at the time plaintiff and defendant became engaged to marry and at the time of their marriage, and to the best of plaintiff's knowledge and belief is still living.

"That for the purpose of inducing the plaintiff to consent to marry and to marry the defendant, the defendant falsely and fraudulently represented to him that she was a widow, that she would have the marriage solemnized in the Roman Catholic Church after such ceremony had been solemnized in the Methodist Episcopal Church, well knowing that such promise could not be carried out, and intending, at the time she made such promise, not to carry it out; and defendant falsely and fraudulently concealed from the plaintiff the

fact that she had been divorced and that her divorced husband was then living.

"That plaintiff did not know that defendant was a divorced woman who had a divorced husband living, and relied upon the representations and promise made by the defendant as above set forth, and was induced thereby to promise to marry and to marry the defendant according to the rites of the Methodist Episcopal Church.

"That plaintiff would never have consented to marry the defendant except for the false and fraudulent representations, promise, and concealment made by the defendant, because at his advanced age and in his weak bodily condition the consolations of his religion were cherished by him in the highest degree.

"That shortly after the marriage of plaintiff and defendant the plaintiff first learned that defendant was a divorced woman whose divorced husband was living, and that plaintiff thereupon presented the facts to the Roman Catholic priest of his parish and was advised by said priest that said marriage would not be recognized as valid by the Roman Catholic Church, and the plaintiff must repudiate said marriage and separate from the defendant or suffer excommunication from the Roman Catholic Church; that thereupon plaintiff separated from defendant and has not since cohabited with her."

Plaintiff demanded judgment "that said marriage between plaintiff and defendant be annulled and declared void, and for the costs of this action."

During the pendency of the appeal in this court the plaintiff Albert A. Talham died and an executor of his estate was appointed, and by stipulation it was agreed, subject to the approval of this court, that the executor be substituted in place of Albert A. Talham as the plaintiff and respondent, and that the action and appeal be continued, prosecuted, and defended by the executor in like manner as if the deceased had survived the final determination thereof, and that the title of the action be changed accordingly.

It was stipulated that attorneys for the defendant did not waive the right to contest the survivorship of the action.

Wells v. Talham, 180 Wis. 654.

In view of the conclusion we have reached it becomes unnecessary to decide whether the action is one which survives.

The contract of marriage was made in Massachusetts, and it seems to be agreed by counsel that the validity of the marriage is to be governed by the law of that state and that there is no material difference in the law of the two jurisdictions.

There is no doubt that under our statute a marriage may be annulled for fraud, force, or coercion unless the marriage has been confirmed by the acts of the injured party. Sub. (4), sec. 2351, Stats. The problem consists in determining what acts or representations amount to fraud which may authorize the courts to decree the annulment.

In England the law on this subject has long been well settled. In a case decided in 1818 the court used the following language:

"The strongest case you could establish of the most deliberate plot, leading to a marriage the most unseemly in all disproportions of rank, of fortune, of habits of life, and even of age itself, would not enable this court to release him from chains which, though forged by others, he had riveted on himself. If he is capable of consent and has consented, the law does not ask how the consent has been induced." *Sullivan v. Sullivan,* 2 Hagg. Cons. Rep. 238, 248.

In somewhat less emphatic language it was said in 1897:

"The result is that the English law of the validity of marriage is clearly defined. There must be the voluntary consent of both parties. There must be compliance with the legal requirements of publication and solemnization, so far as the law deems it essential. There must not be incapacity in the parties to marry either as respects age or physical capability or as respects relationship by blood or marriage. Failure in these respects, but I believe in no others (I omit reference to the peculiar statutory position of the descendants of George II.), renders the marriage void or voidable." *Moss v. Moss,* L. R. [1897] Prob. Div. 263, 268.

In that case it was held that concealment by a woman from

her husband at the time of her marriage of the fact that she was then pregnant by another man did not render the marriage null and void.

In an early case in Massachusetts the court laid down the rule which has been consistently followed in that state, that mere errors or mistakes into which a person may fall concerning the character or qualities of a wife or husband, although occasioned by disingenuous or false statements or practices, will not afford sufficient reason for annulling an executed contract of marriage; that in the absence of force or duress, where there is no mistake as to the identity of the person, any error or misapprehension as to personal traits or attributes or concerning the position or circumstances in life of a party is wholly immaterial and furnishes no ground for divorce; and that no misconception as to the character, fortune, health, or temper, however brought about, will support an allegation on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice; that these are accidental qualities which do not constitute the essential and material elements on which the marriage relation rests.

It was held in that case that misrepresentations as to antenuptial unchastity alone did not afford a sufficient ground for declaring a marriage void; but that a marriage consummated on the faith of a representation that the woman is chaste and virtuous, when it is afterward ascertained that the statement was false, and that at the time of making it and at the time of entering into the marriage relation she was pregnant with child by another man, the marriage might be annulled for fraud.

This ruling was placed on the ground that such false representations affected directly her actual present condition and her fitness to execute the marriage contract; that in such a case the concealment and false statements go directly to the essentials of the marriage contract and operate as a fraud of the gravest character. *Reynolds v. Reynolds,* 85 Mass. 605.

In *Smith v. Smith*, 171 Mass. 404, 50 N. E. 933, a marriage was annulled where it appeared that the plaintiff, soon after the ceremony and before the consummation of the marriage, on learning that the respondent was afflicted with a venereal disease, refused to live with and never did live with him, and the judge found that he was constitutionally afflicted with syphilis, with which the plaintiff would become infected in case of cohabitation, and that the disease would be transmitted to any offspring which they might have.

The decision in *Reynolds v. Reynolds* was quoted and the principle of that case was approved, and the marriage was annulled on the ground that the concealed disease was such as would leave with the plaintiff no foundation on which the marriage relation could properly rest. The plaintiff could not live with the defendant as his wife without making herself a victim for life and giving to her offspring, if she should have any, an inheritance of suffering.

· In the recent case of *Chipman v. Johnston*, 237 Mass. 502, 130 N. E. 65, there was manifestly wicked deception perpetrated by the husband as to his name, place of residence, business, property, relatives, and situation in life. A few days after the marriage he deserted the plaintiff. But it did not appear that the man impersonated another or that the woman was mistaken as to his identity. The case quoted approvingly the *Reynolds Case, supra*.

There is a line of decisions in this country which have adopted a less rigorous rule for annulling marriage contracts than that which prevails in Massachusetts. This is illustrated by New York cases. In *Di Lorenzo v. Di Lorenzo*, 174 N. Y. 467, 67 N. E. 63, the defendant by a fraudulent representation and by a stratagem caused the plaintiff to believe that he was the father of defendant's child. It was said in the opinion of the court that the law considers marriage in no other light than as a civil contract; that it is a general rule that every misrepresentation of a material fact made with the intention to induce another to enter into an agreement, and without which he would not have done so,

justifies the court in vacating the agreement; and that there is no valid reason for excepting the marriage contract from the general rule. It is held that the fraud must be material to the degree that, had it not been practiced, the party deceived would not have consented to the marriage. The theory of the court of appeals in this case has been adopted in numerous decisions of the supreme courts of New York on varying facts.

Of course it is well known that in New York there is only one ground for divorce. Owing partly to this fact, cases for the annulment of marriage have often presented to the New York courts instances of extreme hardship, and it is possible that the courts of that state have insensibly been affected by such situations.

Counsel for plaintiff quote extensively in their brief from *Gatto v. Gatto,* 79 N. H. 177, 106 Atl. 493. In this case the husband had been led by false representations to believe that his wife had been a virtuous woman, but ascertained that she had been guilty of incest with her father for a number of years. There is language in the decision from which it may be inferred that the New Hampshire court accepts the view of the New York courts.

Counsel also cite *Gould v. Gould,* 78 Conn. 242, 61 Atl. 604, where the wife was an epileptic, and *Davis v. Davis,* 90 N. J. Eq. 158, 106 Atl. 644, where the husband had carefully concealed the fact that he was suffering from hereditary, chronic tuberculosis.

These last two cases rest on a somewhat different foundation from those which are based on false representations as to chastity, wealth, social and family relations, and the like. Marriage under such conditions may seriously endanger the health of offspring of the marriage and it may be urged with much force that misrepresentations of this character go to the real essentials of the marriage relation.

There is no doubt that the decisions of our court have adopted the rule prevailing in Massachusetts and most other

states rather than that of the New York courts. In *Varney v. Varney,* 52 Wis. 120, 8 N. W. 739, the fraud charged was that of misrepresentations as to former chastity of the wife. In a careful opinion by·Mr. Justice TAYLOR there was a long quotation from the *Reynolds Case, supra,* in which the material and essential elements on which the marriage relation rests had been distinguished from those which are accidental and immaterial in determining whether a marriage should be annulled.

In *C—— v. C——,* 158 Wis. 301, 148 N. W. 865, it was held that where the wife had concealed the fact that she was afflicted with a loathsome venereal disease and had infected the husband there was such fraud as entitled him to annulment, there having been no confirmation of the marriage after discovery of the fraud. In the opinion by Mr. Justice VINJE it was said that the decision in *Varney v. Varney* was founded on sound public policy and should not be questioned, but that considerations of morality and health alike dictate that neither spouse should be compelled to submit to the indignity and menace presented by such an infection.

In *Winner v. Winner,* 171 Wis. 413, 177 N. W. 680, in another opinion by Mr. Justice VINJE, it was held that a marriage could be annulled because of the fraud of the defendant in concealing that her pregnancy was by another man than her husband and in causing him to believe that he was the cause thereof; that such a fraud is vital and goes to the essentials of the marriage relation.

In *Lyannes v. Lyannes,* 171 Wis. 381, 177 N. W. 683, in an opinion by Mr. Justice ESCHWEILER, it was held that a misrepresentation by the husband as to his age, inducing the wife to enter into a futile marriage ceremony in Michigan, in evasion of the law, did not meet the requirements of the substantial nature of the fraud that must be shown to have the contract declared null and void.

In two very recent cases the trial court had found one of the parties mentally incompetent to enter into the marriage

contract, but the judgments were reversed because the proofs did not meet the requirements necessary to set aside the marriage contract. *Hempel v. Hempel,* 174 Wis. 332, 181 N. W. 749, 183 N. W. 258; *Roether v. Roether,* 180 Wis. 24, 191 N. W. 576.

It will be seen from the decisions that this court early adopted the view, which has been adhered to, that, although marriage is purely a civil contract, false representations which would set aside ordinary civil contracts are not necessarily sufficient to void the contract of marriage. This policy depends not alone on the vital importance of the dissolution of the marriage relation to the parties directly concerned. It rests on the deep concern of the state that the integrity of the marriage contract shall, so far as possible, be preserved. This is shown by the careful provision of our statute regulating marriage and divorce, including the statute providing for the appointment of divorce counsel in each county to represent the public, whose duty it is to appear and investigate the merits in such actions for the prevention of collusion, fraud, and imposition upon the court.

We are convinced that the general rule to be applied in actions of this kind, which was early adopted in Massachusetts and which has been followed in this state, may be said to be the rule which generally prevails in this country. Following are a few of the many cases which might be cited to support this view: *Jakar v. Jakar,* 113 S. C. 295, 102 S. E. 337; *Williams v. Williams* (Del.) 118 Atl. 638; *Kawabata v. Kawabata* (N. Dak.) 189 N. W. 237; *Wier v. Still,* 31 Iowa, 107; *Lewis v. Lewis,* 44 Minn. 124, 46 N. W. 323; *Trask v. Trask,* 114 Me. 60, 95 Atl. 352; *Leavitt v. Leavitt,* 13 Mich. 452; *Beckley v. Beckley,* 115 Ill. App. 27; *Browning v. Browning,* 89 Kan. 98, 130 Pac. 852; *Delpit v. Young,* 51 La. Ann. 923, 25 South. 547; *Allen v. Allen,* 85 N. J. Eq. 55, 95 Atl. 363; *Johnson v. Johnson,* 176 Ala. 449, 58 South. 418.

Counsel for plaintiff place some reliance on the allegation

that decedent was of advanced age and weak bodily con-
dition. It will be observèd that there is no averment that his
intellect was impaired by age or that he was mentally unable
to give his consent with full understanding of the obliga-
tion he assumed. There are cases in which marriages have
been annulled by reason of gross frauds practiced on very
young girls or upon aged persons mentally incompetent, but
an examination of the cases shows that under the circum-
stances there was a failure or inability to give consent. We
find no such element in the present case.

Plaintiff's counsel also rely on the promise to have a
second marriage performed with the intention not to ful-
fil the promise, and several cases decided by the New York
supreme court are cited where marriages were annulled be-
cause the husbands refused to fulfil promises to have a
Jewish ceremony after the civil marriage. *Rubinson v.
Rubinson*, 110 Misc. 114, 181 N. Y. Supp. 28; *Watkins v.
Watkins*, 197 App. Div. 489, 189 N. Y. Supp. 860; *Rozsa
v. Rozsa*, 117 Misc. 728, 191 N. Y. Supp. 868. But we
believe them to be utterly at variance with the rule generally
adopted in this country.

Even in ordinary civil cases it is the familiar rule that
representations to be fraudulent must relate to a present or
past state of facts and not to promises looking to the future,
although there is some division of authority on the question
whether an action for fraud may be based on a false state-
ment of present intent which is material, made with intent
to deceive and relied on by the other party. But this is
not an ordinary civil contract, and we cannot agree that a
marriage should be annulled on the ground of broken
promises.

It is not claimed by counsel for plaintiff that as a general
rule false representations that a party to a marriage has never
been divorced constitute such fraud as will justify a decree
nullifying the marriage contract. Such a fraud does not go
to the essence of the contract. *Donnelly v. Strong*, 175

Mass. 157, 55 N. E. 892; *Trask v. Trask,* 114 Me. 60, 95 Atl. 352; *Davis v. Whitlock,* 90 S. C. 233, 73 S. E. 171. The discovery by the party deceived might bring mental distress, but a divorce does not prevent entering into a new marriage relation or the performance of all its duties.

Counsel for respondent earnestly argue that owing to the age and the religious faith of decedent and the canons of his church the false representations did go to the very essentials of the marriage contract; that the marital relation under the facts stated in the complaint could only result in unhappiness to at least one of the contracting parties. This presents a new phase in actions to nullify the marriage contract, and no case from any court of last resort seems to have passed upon it. However, in *Boehs v. Hanger,* 69 N. J. Eq. 10, 59 Atl. 904, a somewhat similar situation was presented and the plaintiff was denied relief. The question is raised whether members of one church can succeed in nullifying a marriage upon false representations when the same representation would afford no cause of action to members of other churches. We are not inclined to give our sanction to such a proposition.

On the demurrer we must assume that the allegations of the complaint are true, and we fully appreciate the disappointment of the decedent when he discovered that he had been cruelly deceived. But the degree of disappointment realized by a spouse on the discovery of hidden and disagreeable facts in the past life of the other spouse can hardly be the basis for annulling a marriage unless there has been fraud going to the essentials and material elements on which the marriage relation rests.

In the opinion of many, the representations relied on in this case would be far less productive of marital unhappiness than falsehoods leading a sensitive and honorable man into marriage with a woman whose life had been sexually impure.

It is argued that if the facts had been known to the decedent he would not have entered into the contract and there-

fore the decedent never gave the consent necessary to the validity of the marriage contract. In other words, the question whether the complaining party would have entered into the contract if the real facts had been known is made quite controlling as to the materiality of the false representations. There is some basis for this argument in some of the New York cases, but it is a view which we cannot accept and which is out of harmony with the decisions of this court and the prevailing rule in America. Nor do we accept the view expressed in some of the quotations from decisions found in plaintiff's brief that the word "fraud" in statutes of this character means fraud as usually understood in its application to contracts generally.

The contract is "something more than a mere contract; it is rather to be deemed an institution of society, founded upon the consent and contract of the parties, and in this view it has some peculiarities in its nature, character, operation and extent of obligation, different from what belong to ordinary contracts." Story, Conflict of Laws, sec. 108, note.

There is no allegation in the complaint from which it can be inferred that the defendant is not able and willing to perform all the duties of the marriage contract, and we must hold that it appears on the face of the complaint that the essentials of the marriage contract, as construed by the great weight of authority, were complied with. It follows that the demurrer should have been sustained.

We have cited only a few of the great number of authorities bearing on the questions involved. Interesting and valuable notes may be found in 18 L. R. A. 376; 25 L. R. A. 800; 30 L. R. A. N. s. 301; 22 A. L. R. 818; 13 Harvard Law Review, 110; 2 Wisconsin Law Review, 117, and in 14 A. L. R. 121; *Bannon v. Bannon,* 50 Washington Law Reporter, 22, 23 A. L. R. 178.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer.