DANIEL S. WEMPLE v. MAUD WILCOX WEMPLE.[1]

February 25, 1927.

No. 25,633.

**Finding of fact sustained by evidence.**
    1. The only finding of fact assailed is supported by the evidence.

**Marriage annulled on ground of fraud.**
    2. Defendant for many years lived as the wife of a man whose lawful wife was still living. This was concealed from plaintiff and his family, neighbors and intimate friends of defendant and her supposed husband. After the death of plaintiff's wife, defendant by falsely representing that she had secured a divorce from the man with whom she had been living and pretending love and affection for plaintiff induced him to marry her, evidently for the sole purpose of obtaining a share in his property, he being an aged person. It is *held* that the facts found justified an annulment of the marriage on the ground of fraud.

**Supreme court without authority to award alimony or attorney's fees.**
    3. After the entry of judgment annulling the marriage in the court below and the subsequent death of the husband, this court, on appeal from the judgment, is without authority to award the wife alimony or attorney's fees.

Marriage, 38 C. J. p. 1301 n. 6, 14; p. 1302 n. 23; p. 1303 n. 32; p. 1361 n. 91 New.

See 18 R. C. L. 413; 6 R. C. L. Supp. 1064.

Defendant appealed from a judgment of the district court for Otter Tail county, Nye, J., annulling a marriage. Affirmed.

*E. S. Cary, Meshbesher & Anderson, R. M. Works* and *Leonard Eriksson,* for appellant.

*N. F. Field* and *Cyrus A. Field,* for respondent.

[1]Reported in 212 N. W. 808.

HOLT, J.

The appeal is from a judgment annulling the marriage between the parties.

Pending the appeal plaintiff deceased. His representative has been duly substituted, but in this decision the original plaintiff will be referred to as plaintiff.

There are only two assignments of error which raise reviewable questions in this court. The first is that the evidence does not support the finding: "That there has been no cohabitation between plaintiff and defendant since plaintiff learned of defendant's false and fraudulent representation and concealment, as hereinbefore set forth." We think plaintiff's testimony fully justified the finding. Defendant did not testify to the contrary. Cohabitation, within the meaning of this finding, is of course more than merely remaining in the same house and preparing meals for both during the three or four days which defendant remained after plaintiff discovered the fraud.

The other assignment of error is: "The judgment * * * is not supported by the findings of fact." This raises the vital question of the appeal. No finding of fact is challenged except the one first mentioned and that unsuccessfully, hence all the findings of fact must be taken as true and fully supported. A summary thereof may be stated thus:

The parties were married on August 9, 1924, plaintiff being then 71 and defendant 49 years. Plaintiff and defendant lived for some years prior to 1920 in Fergus Falls. At that time plaintiff was married and had a large family of grown children, and defendant was living with one G. A. Stalling as his wife. The Stallings thereafter moved to Henning and then to Minneapolis, Minnesota. While at Fergus Falls, also at Henning and Minneapolis, the two families visited back and forth and were on very friendly terms. On May 4, 1924, plaintiff's wife died, and shortly prior thereto defendant was deserted by Stalling, who during all the time he was living with defendant as his wife was the husband of another woman. Defendant learning of the death of plaintiff's wife wrote him letters of sympathy at first, which soon were followed by those pretending

to express great love and affection for him. In short defendant artfully induced plaintiff to marry her, writing him that she had secured a divorce from Stalling. She had not been divorced and she fraudulently concealed from plaintiff that all the years she had been with Stalling as his wife the latter had another wife living. Plaintiff would not have entered the marriage had he known that the Stallings were not lawfully married and divorced.

Section 8581, G. S. 1923, permits annulment of the marriage at the suit of the injured party "when the consent of [such party to the marriage contract] has been obtained by force or fraud, and there is no subsequent voluntary cohabitation of the parties." Where annulment is sought on the ground of fraud, the voluntary cohabitation, which would preclude relief, must be such cohabitation subsequent to discovery of the fraud. Courts in this country are not agreed as to what fraud will furnish grounds for setting aside a marriage. The absence of statute in some states may account for some divergence of views. Precedents from New York would amply justify the decision of the learned trial court. Domschke v. Domschke, 138 App. Div. 454, 122 N. Y. S. 892; Sheridan v. Sheridan, 186 N. Y. S. 470; Di Lorenzo v. Di Lorenzo, 174 N. Y. 467, 67 N. E. 63, 63 L. R. A. 92, 95 Am. St. 609. In Massachusetts the rule is rather strict against annulment for fraud. Chipman v. Johnston, 237 Mass. 502, 130 N. E. 65, 14 A. L. R. 119.

In this state the fraud which will justify annulment of a marriage has been considered in Lewis v. Lewis, 44 Minn. 124, 46 N. W. 323, 9 L. R. A. 505, 20 Am. St. 559; Behsman v. Behsman, 144 Minn. 95, 174 N. W. 611, 7 A. L. R. 1501; and in Robertson v. Roth, 163 Minn. 501, 204 N. W. 329, 39 A. L. R. 1342, where the authorities are quite fully cited. They all relate to concealment of insanity or epilepsy, a misfortune for which the party is not to blame.

In the Robertson case it was held that concealment or deception by one of the parties as to defects of character, morality, chastity, habits, temper or other accidentals which do not constitute the basis for the marriage relation does not furnish ground for annulment. Like matters would be birth, social or financial standing, etc. It

was further held that fraud which would constitute ground for annulment "must be something that destroys the consent which blots out all semblance of contract—or it must impose at the time of the marriage upon the one wronged, burdens and obstacles. wholly unexpected and of such character that they tend to the destruction of domestic happiness and promote humiliation disclosing a situation intolerable to society and detrimental to the marriage relation."

The sum and substance of the fraud in the case at bar was that defendant falsely stated that she had secured a divorce and concealed from plaintiff her true relation with Stalling. This fraud did not go to her capacity to fulfil her marriage obligations with plaintiff, for she needed no divorce since her living with Stalling could not ripen into a common law marriage so long as his wife lived undivorced. Ordinarily misrepresentation as to a prior status of being divorced or never having been married is not such a fraud as to afford grounds for annulment.

This subject is extensively treated in Wells v. Talham, 180 Wis. 654, 194 N. W. 36, 33 A. L. R. 827. There the plaintiff was a devout Catholic, and the defendant falsely stated to him that she never was divorced, though such was the case, and her former husband was living; so that according to the rules of the plaintiff's church he had to cease to cohabit with her or suffer excommunication. It was held not to give cause for annulment of the marriage. In the dissolution of a lawful marriage not only the parties but the state is concerned. Hence the welfare of society and the rights of innocent parties must be considered. Where marriage has been consummated there may be the interests of children born or unborn. But in determining the sufficiency of the fraud each case must be considered on its own facts. In the instant case defendant and Stalling had for years held themselves out to plaintiff, to his family and to the community as living in honorable wedlock. The state was interested in assuming that such was the fact. When it was disclosed to plaintiff that it was untrue, was there not such an unexpected and intolerable burden thrust on him of a character entirely to destroy his domestic peace and heap humiliation upon him and his family within the language of Robertson v. Roth, supra?

It would seem that society required that a person, carrying on for years such meretricious connection, should not, under the false pretense of having secured a lawful divorce from what she had led plaintiff and the community to believe was an honorable status, be allowed to entrap an unsuspecting person into an irrevocable marriage contract. The record is clear that defendant designedly and artfully carried out the fraudulent representation in order to secure rights in plaintiff's property. That she well knew that unless she represented that she had obtained a divorce from Stalling, whom plaintiff and the state itself were justified in considering her lawful husband, plaintiff never would have consented to a marriage with her. In this case the words in Orchardson v. Cofield, 171 Ill. 14, 49 N. E. 197, 40 L. R. A. 256, 63 Am. St. 211, are fitting:

"No one will suffer by the decree below unless it be the wrong-doer himself. No right or interest of society demands that such a marriage should be upheld."

We may not be ready to go the full length stated in Reeve, Dom. Rel. 206, nor with all said in Gatto v. Gatto, 79 N. H. 177, 106 Atl. 493, but there is force in the reasoning. In the Gatto case the language is:

"The public policy of this state, evidenced by the statutes, the decisions, or the general concensus of opinion, does not regard a fraudulent marriage ceremony as sacred and irrevocable by judicial action; it does not encourage the practice of fraud in such cases by investing a formal marriage, entered into in consequence of deceit, with all the force and validity of an honest marriage. While marriage is a contract attended with many important and peculiar features in which the state is interested, and while it is one of the fundamental elements of social welfare, its transcendent importance would seem to demand that wily and designing people should find it difficult to successfully perpetrate fraud and deceit as inducements to the marriage relation, rather than that such base attempts should be regarded as of trivial importance and be wholly disregarded by the courts. Unhappy and unfortunate marriages ought not to be

encouraged. Schouler, Dom. Rel. § 24. The successful perpetration of fraud is not deemed to be a subject for judicial encouragement (Lyman v. Lyman, 90 Conn. 399, 411, 97 Atl. 312, L. R. A. 1916E, 643), nor is the court authorized to legislate in favor of such a policy."

And Reeve says: "There is no more reason for sanctioning a marriage procured by fraud, than one procured by force and violence. The consent is totally wanting, in view of the law, in the former, as in the latter case."

As tending to sustain the decision herein may be cited: Raia v. Raia, 214 Ala. 391, 108 So. 11; Lyndon v. Lyndon, 69 Ill. 43; Christlieb v. Christlieb, 71 Ind. App. 682, 125 N. E. 486; Browning v. Browning, 89 Kan. 98, 130 Pac. 852, L. R. A. 1916C, 737, Ann. Cas. 1914C, 1288; Entsminger v. Entsminger, 99 Kan. 362, 161 Pac. 607; Brown v. Scott, 140 Md. 258, 117 Atl. 114, 22 A. L. R. 810. In some of the cases the fact is stressed that there was no consummation; but we deem that unimportant here because in the nature of things no child could result from the marriage, and moreover we think our statute contemplates that voluntary cohabitation subsequent to discovery is what precludes annulment of the marriage induced by fraud. The statutes of some states make this clear beyond dispute, as for example California and South Dakota. See also Eliot v. Eliot, 77 Wis. 634, 46 N. W. 806, 10 L. R. A. 568.

Application was made to this court for temporary alimony, suit money and attorney's fees pendente lite. Prior to the hearing thereof plaintiff died. Judgment of annulment of the marriage had already been entered. There remains nothing to litigate except property rights as between plaintiff's heirs or legal representatives and defendant. After plaintiff's death this action must stand precisely as if it had been commenced after such death by those interested in his estate to annul the marriage. In Farnham v. Farnham, 227 N. Y. 155, 124 N. E. 894, it is said: "Alimony and counsel fee can only be allowed when the relation of husband and wife exists. The defendant has no husband. He died in June, 1917, and after his death the court had no power to make an order allowing alimony

and counsel fee in an action brought to annul the marriage." Barbee v. Barbee, 187 N. C. 538, 122 S. E. 177, is to the same effect. Alimony and means to carry on litigation in actions to sever marriage bonds are authorized by statute. G. S. 1923, § 8593. When the bond no longer exists the surviving spouse is given no greater privileges in respect to means to carry on litigation of property rights than those possessed by other parties.

The application must be denied.

The judgment is affirmed.

WILSON, C. J. (dissenting).

I dissent. In this state fraud which justifies annulment of a marriage has been definitely determined in Lewis v. Lewis, 44 Minn. 124, 46 N. W. 323, 9 L. R. A. 505, 20 Am. St. 559; Behsman v. Behsman, 144 Minn. 95, 174 N. W. 611, 7 A. L. R. 1501, and Robertson v. Roth, 163 Minn. 501, 204 N. W. 329, 39 A. L. R. 1342. Under the well-established rule a man cannot annul his marriage even though the woman conceals defects of morality or chastity. Yet in the instant case, where, I believe, the representations would be less productive of domestic grief than false representations leading an ordinary man into marriage with a woman whose life had been sexually impure, an annulment is allowed. Plaintiff's complaint is not based upon the fact that defendant lived with the other man, which was known, but upon the subsequent disclosure that such cohabitation was illegal. This disclosed only the status of the woman's morality which is not a ground for annulment. It was a restricted immorality. It had no more tendency to destroy domestic happiness or disclose a situation intolerable to society than other acts of immorality or acts concealing personal qualities or character.

This state has definitely aligned itself with the firm Massachusetts rule. Reynolds v. Reynolds, 85 Mass. 605; Smith v. Smith, 171 Mass. 404, 50 N. E. 933, 41 L. R. A. 800, 68 Am. St. 440; Chipman v. Johnston, 237 Mass. 502, 130 N. E. 65, 14 A. L. R. 119. It is the prevailing rule as indicated by the authorities cited in Robertson v. Roth, supra. See also Wells v. Talham, 180 Wis. 654, 194 N. W. 36, 33 A. L. R. 827. New York has adopted a less

rigorous rule. There is a reason for this as expressed in Wells v. Talham, supra.

"Of course it is well known that in New York there is only one ground for divorce. Owing partly to this fact, cases for the annulment of marriage have often presented to the New York courts instances of extreme hardship, and it is possible that the courts of that state have insensibly been affected by such situations."

I cannot recognize the conclusion reached as being in harmony with the general rule. It seems to me that it is a complete change from our former holdings and puts us with the New York group where we do not belong. The New York rule gives great weight to the claim that the complaining party would not have entered into the contract if the real facts had been known. This is neither the test nor the true rule. It is fundamentally wrong. Fraud as used in the annulment statute is not fraud as usually understood in its application to contracts generally. The marriage contract as embraced in this statute must be regarded as an institution of society. Story, Conflict of Laws, § 108; Wells v. Talham, supra. The field of operation of the annulment statute should not be thus broadened. I regret that my associates have concluded in substance that each case of this character must stand upon its own facts. The result tends to increase annulment actions. I think it much better to have a well-defined general rule, as I supposed we had, so that the bar may advise with some certainty the propriety of instituting such an action. In my judgment the fraud in this case did not go to the essentials and material elements on which the marriage relation rests. Robertson v. Roth, supra; Davis v. Whitlock, 90 S. C. 233, 73 S. E. 171, Ann. Cas. 1913D, 538; 26 Cyc. 905.