JUANITA BORGSTEDT, Plaintiff, *v.* ROBERT BORGSTEDT, Defendant.*

Supreme Court, Special Term, Kings County, November 12, 1946.

---

* See, also, *Hubner* v. *Hubner,* 188 Misc. 125, and *McHale* v. *McHale,* 188 Misc. 165.— [REP.

*Alfred F. Ritter* for plaintiff.

No appearance for defendant.

WALSH, J. Plaintiff wife moves to reargue a motion to confirm the report of the official referee and for an interlocutory decree of annulment. This undefended annulment action was referred in the usual course to an official referee who held a hearing and signed findings of fact and conclusions of law. The motion to confirm the report of the official referee and for a judgment of nullity was denied on the ground that the plaintiff had not established a prenuptial fraud (see 64 N. Y. S. 2d 888).

This action is to annul a marriage on the ground that before the marriage defendant fraudulently promised he would marry plaintiff in a Catholic religious ceremony after they had been married in a Protestant religious ceremony. They were married in August, 1942, and this action was commenced in March, 1946, a year and a half after a child was born of the marriage.

As pointed out in the previous decision, the plaintiff has not proved her cause of action as required by sections 1139 and 1143 of the Civil Practice Act, and after a careful review of the evidence and affidavit and brief of the plaintiff submitted on this motion, the court still holds to its original determination.

In addition, however, a question of law is presented which the court, in the performance of its duty, cannot overlook.

In this State marriages have been annulled for fraud where the husband refused to fulfill a promise to have a religious ceremony after the civil marriage. (*Rubinson* v. *Rubinson*, 110 Misc. 114; *Watkins* v. *Watkins*, 197 App. Div. 489; *Rosza* v. *Rosza*, 117 Misc. 728; *Rutstein* v. *Rutstein*, 221 App. Div. 70; *Aufiero* v. *Aufiero*, 222 App. Div. 479; *Raphael* v. *Raphael*, 222 App. Div. 664.)

In all of those cases, however, an annulment was granted because of a fraudulent prenuptial promise to have a ceremonial marriage after a civil marriage. None of them involved a second ceremonial marriage. Further, in all of those cases the marriage had not been consummated by cohabitation. None

of them would appear to be an authority for an annulment in the instant case where there had been a religious ceremony, the marriage had been consummated and a child was born more than two years after the marriage.

The court has been unable to find any reported decision of Special Term or of the appellate courts of this State holding that a promise to have a second ceremonial marriage can be the basis of a prenuptial fraud. The leading case on the subject outside of the State of New York is *Wells* v. *Talham* (180 Wis. 654). There, on similar facts, the court held that the promise of a party to a marriage ceremony that a second marriage would be performed according to the rites of a particular church, with no intention of performing it, is not such fraud as will avoid a marriage. The court stated (p. 657): "There is no doubt that under our statute a marriage may be annulled for fraud, force, or coercion, unless the marriage has been confirmed by the acts of the injured party. Sub (4), sec. 2351, Stats. The problem consists in determining what acts or representations amount to fraud which may authorize the courts to decree the annulment."

The court then cited the various authorities, including those of our own State, and pointed out (p. 662): "It will be seen from the decisions that this court early adopted the view, which has been adhered to, that, although marriage is purely a civil contract, false representations which would set aside ordinary civil contracts are not necessarily sufficient to void the contract of marriage. This policy depends not alone on the vital importance of the dissolution of the marriage relation to the parties directly concerned. It rests on the deep concern of the state that the integrity of the marriage contract shall, so far as possible, be preserved. This is shown by the careful provision of our statute regulating marriage and divorce, including the statute providing for the appointment of divorce counsel in each county to represent the public, whose duties it is to appear and investigate the merits in such actions for the prevention of collusion, fraud, and imposition upon the court.

"We are convinced that the general rule to be applied in actions of this kind, which was early adopted in Massachusetts and which has been followed in this state, may be said to be the rule which generally prevails in this country." (Citing cases.)

It was there recognized that New York has a less rigorous rule for annulling marriage contracts (*di Lorenzo* v. *di Lorenzo*, 174 N. Y. 467, to which might be added *Shonfeld* v. *Shonfeld*, 260 N. Y. 477). In those cases, however, the alleged **fraud**

related to a present or past state of facts. As pointed out in *Wells* v. *Talham* (*supra,* p. 663): "Even in ordinary civil cases it is the familiar rule that representations to be fraudulent must relate to a present or past state of facts and not to promises looking to the future, although there is some division of authority on the question whether an action for fraud may be based on a false statement of present intent which is material, made with intent to deceive and relied on by the other party. But this is not an ordinary civil contract, and we cannot agree that a marriage should be annulled on the ground of broken promises."

It would seem further that an annulment should be denied in this case under the rule laid down in this State in *Mirizio* v. *Mirizio* (242 N. Y. 74), where Chief Judge HISCOCK, writing the prevailing opinion, stated (p. 83): "Our state as a matter of long-continued policy, by many statutes and innumerable decisions has fixed the status of the marriage contract as a civil contract which when once executed becomes binding and carries with it certain rights, duties and obligations and the real question presented to us in this case is whether the parties to such a contract lawfully and completely entered into may modify its effect, postpone its consummation and lessen its undoubted and fundamental obligations by private agreements between themselves. In this particular case the private agreement embodies religious observances and from that standpoint is of high order. In the next case the agreement may be based on less meritorious and more selfish considerations and it requires no fertile vision to see where we may be led if the views now being urged shall prevail, that the parties by private agreement may permanently annul or indefinitely postpone the obligations which they assume when they enter into the marriage contract and defeat the policy of the State and the views which have so long and definitely prevailed in a right-minded society."

The dissenting judges were careful not to disagree with that statement. Judge CRANE said (pp. 87-88): "Besides, there is a large matter of public policy involved in a case like this. The man and wife are not the only ones interested. The public is largely concerned in this question of divorce and the dissolution of homes. Any judge who has held a Special Term in our large cities is acquainted with the large number of uncontested divorce cases, and has had the feeling that they are frequently based upon perjury. The number of divorces is a matter of public comment and criticism. While the courts must grant decrees where honest testimony brings the case within our

statutes, yet at the same time they should be careful not to let down the barriers or make it easy for deception. If the law is going to permit a man to get a separation because of non-intercourse, the next step will be to permit him to obtain a dissolution of the marriage upon the same ground where it has not been consummated. This would open wide the door for the annulment of marriages where absolute divorces could not be obtained upon the statutory ground."

And Judge LEHMAN wrote (p. 93): " I accept without reservation or doubt the rule of law that the obligations of the marriage contract are fixed and may not be modified by private agreement or the religious tenets of the parties. I agree that if a reversal of the judgment of the courts below would in the slightest degree impair the legal effect of a civil marriage or permit religious ceremony to alter or increase the legal obligation of the civil marriage, then the judgment of the courts below must be affirmed. Our public policy is upon these points fixed and must be upheld by the courts."

The parties in effect claim that they made a private agreement that in the future there would be a second ceremonial marriage. Logically, the plaintiff must claim that this was of such importance to her that if the promise were not kept, she would not consider herself married. The law does not recognize any such private agreement and it is difficult to see how a prohibited agreement can be recognized as the basis of a prenuptial fraud.

In the instant case the parties had a religious ceremony which in this State is recognized to be at least equal to a civil marriage (Domestic Relations Law, § 11).

Our State does not appoint or designate any official other than the court to guard the important public interests in undefended matrimonial actions. This places upon the court not only the entire burden of ascertaining the facts and applying the law but also the added duty of protecting the community. The court will not open any wider the door for the annulment of marriages in this State.

The motion for reargument is granted, and, on the reargument, the court adheres to its original decision on the facts and on the law. The motion for interlocutory decree of annulment is denied.