THOMAS M. CASSIN *vs.* HELEN M. CASSIN.

Suffolk.    March 7, 1928. — May 29, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Marriage and Divorce,* Validity of marriage. *Annulment. Religion. Fraud.*

The mere facts, that a divorced woman thirty-three years of age, who had been baptized in the Methodist Episcopal Church and whose former husband was living, falsely represented to a devout communicant of the Roman Catholic Church who proposed to marry her if there were no religious impediments, that she was twenty-five years of age and that, although she had been married, her former husband had died; that the man thus proposing to marry her believed such statements; that at his request she was baptized in the Roman Catholic Church and afterwards married him in that church, making like representations to the officiating clergyman and to the registrar of marriages; that, under the laws of

the Roman Catholic Church such marriage was not valid; and that no children had been born of the union, do not constitute such fraud as will warrant the granting of the prayer of a libel by the husband that the marriage be declared void.

LIBEL, filed in the Probate Court for the county of Norfolk on December 14, 1926, seeking a decree of nullity of marriage.

In the Probate Court, the libel was heard by *McCoole*, J. Material facts found by him are stated in the opinion. He reserved the case for determination by this court.

*P. J. Sondheim*, for the petitioner.

No argument nor brief for the respondent.

PIERCE, J. This is a petition filed in the Probate Court for the county of Suffolk for the nullity of the marriage of Thomas M. Cassin with Helen M. Cassin. The relevant facts found and reported by a judge of that court are as follows: The libellant and the libellee were married in this Commonwealth, in accordance with the rites of the Roman Catholic faith, on May 26, 1918, and lived together until December 13, 1921. No children were born of the marriage. The libellant before his marriage ever was and is now a devout communicant of the Roman Catholic Church. The libellee was an adherent of and baptized in the Methodist Episcopal Church. At the time the parties were contemplating marriage the question of their religious differences was discussed. The libellant proposed that he would marry the libellee if there were no religious impediments. He asked her if she had ever been married and she replied that she had been. He asked her if she had ever been divorced and she said that she had never been divorced; that she was a widow; her husband and she had lived in Brockton, and he had met with an accident and had been killed. The libellant then made known to her that as a condition precedent to his marriage, since she was not a divorced woman, he would require her to become a convert and be married according to the rites of the Roman Catholic Church. The libellee thereupon agreed to comply with these terms and did in the early part of January, 1918, enter into due preparation for her affiliations with the Roman Catholic Church. At the preliminary examination before a pastor of that church, she

stated that she was not divorced but was a widow. On March 25, 1918, she was converted and baptized by the Rev. Patrick H. Riley into the Roman Catholic Church. Prior to their marriage she stated to the libellant that she was twenty-five years of age, and stated to the pastor that according to the records of her baptism she was born on June 2, 1892, and she made oath before the registrar of marriages that she was a widow. The libellee was in fact born on June 2, 1885, and was divorced on June 25, 1909, the divorce becoming absolute on December 27, 1909.

The libellant believed the representations made to him by the libellee as to her being but twenty-five years of age, that she was a widow and not divorced, that her husband was killed by an accident, and that she was eligible to embrace the Roman Catholic faith, and he would not have entered into the said marriage with her had he known that she had been divorced. From the time he first learned that she was a divorced woman, he ceased to live with her. The judge further found that "under the Canon Laws of the Roman Catholic Church a person who has been baptized and subsequently marries and is divorced, cannot while his wife or her husband is still living, be married in said church; that the impediment is one which cannot be dispensed and that such a marriage if actually performed under a misstatement of facts, as in this case, to the officiating clergyman is not a valid marriage in the eyes of the said church. The libellee in the present case was baptized in the Methodist Episcopal Church prior to her marriage to her first husband, was later divorced from him and he was living at the time of her marriage to the libellant . . . said marriage to the libellant is not a valid marriage under the laws of the Roman Catholic Church."

The libellant accepts as the law of the case the judgment of *Reynolds* v. *Reynolds*, 3 Allen, 605, 608, wherein Bigelow, C.J., said that, where the contract has been executed, "Nothing can then avoid it which does not amount to a fraud in the *essentialia* of the marriage relation." What such fraud may be is stated at page 607 in these words: " . . . it is not to be supposed that every error or mistake into which a

person may fall concerning the character or qualities of a wife or husband, although occasioned by disingenuous or even false statements or practices, will afford sufficient reason for annulling an executed contract of marriage. In the absence of force or duress, and where there is no mistake as to the identity of the person, any error or misapprehension as to personal traits or attributes, or concerning the position or circumstances in life of a party, is deemed wholly immaterial, and furnishes no good cause for divorce. Therefore no misconception as to the character, fortune, health or temper, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice. These are accidental qualities, which do not constitute the essential and material elements on which the marriage relation rests. The law, in the exercise of a wise and sound policy, seeks to render the contract of marriage, when once executed, as far as possible indissoluble. The great object of marriage in a civilized and Christian community is to secure the existence and permanence of the family relation, and to insure the legitimacy of offspring.'' The concealment of the fact that the libellee was a divorced woman, and not a widow as she falsely represented, was a most serious and culpable fraud from the viewpoint of the libellant and under the canon laws of the Roman Catholic Church, but it did not go to the essentials of the marriage relation. The fact that the libellee was divorced when married to the libellant would not prevent her from being a faithful wife, nor ''preclude performance of the duties which the law and custom impose upon husband or wife as a party to the contract.'' *Trask* v. *Trask*, 114 Maine, 60, 61. We are of opinion that the libellant can have no relief in these proceedings. *Chipman* v. *Johnston*, 237 Mass. 502. *Richardson* v. *Richardson*, 246 Mass. 353.

*Petition dismissed.*