ALFRED VICTOR DU PONT, Plaintiff Below, Appellant, v. DOROTHY ELIZABETH BARTON DU PONT, Defendant Below, Appellee.

(*June* 12, 1952.)

WOLCOTT and TUNNELL, Justices, and BRAMHALL, Vice-Chancellor, sitting.

*Arthur G. Logan* and *Stephen E. Hamilton, Jr.*, for appellant.

*James R. Morford* and *William Marvel* for appellee.

Supreme Court of the State of Delaware, No. 2, 1952.

WOLCOTT, J.:

The complaint for annulment was filed in the court below by the husband (hereinafter referred to as the plaintiff) and contested by the wife (hereinafter referred to as the defendant).

The complaint is filed under 1935 *Code*, §§ 3497(c) and 3497(d). Two grounds are asserted for annulment of marriage; first, that, by reason of the invalidity of a Texas divorce decree, the defendant had a husband living at the time of her marriage to the plaintiff, and, second, that the plaintiff was induced to marry the defendant by reason of fraud.

The defendant answered the complaint and at the close of the taking of testimony on behalf of the plaintiff moved for a dismissal. Pursuant to Rule 41(b) of the Superior Court, a ruling on the motion to dismiss was deferred and testimony was taken on behalf of the defendant. Thereafter, the court granted the defendant's motion to dismiss. A review of the judgment of dismissal is now sought by the plaintiff.

The court below made no findings of fact but assumed for the purpose of ruling on the motion to dismiss that the facts asserted by the plaintiff were correct. The uncontradicted portion of the facts asserted by the plaintiff may be briefly summarized as follows:[1]

The defendant, in 1934, married one Wigley in Waco, Texas, and lived there with him until 1936 when she left with her mother for California and, eventually, New York to pursue a theatrical career. In New York, she met one Abbott who sponsored her career and gave her large sums of money periodically until 1948. Wigley, still residing in Texas, contributed to her support until the middle of 1940.

In the spring of 1940, the defendant returned to Texas and, in June of that year, divorced Wigley in a Texas court of divorce jurisdiction. Wigley appeared generally in the divorce action but did not defend it. The asserted ground for divorce was cruelty. Wigley is still living.

The defendant then returned to New York and, in April, 1947, met the plaintiff, who was then domiciled with his first wife in Delaware. He continued to see the defendant and, in about a month, they had sexual relations with each other at a resort, which continued regularly and frequently thereafter. The plaintiff and defendant discussed marriage and, in October, the plaintiff left his first wife. Thereafter, the plaintiff obtained the impression, from his observation of the defendant and her state-

---

[1]A fuller statement is to be found in the opinion of the court below, 85 A. 2d 706.

ments to him, that she was of good moral character; was living on her inheritance and divorce settlement; that her divorce had been obtained on the ground of Wigley's impotence; and that she loved him, the plaintiff, and wanted to be his wife. The plaintiff, nevertheless, had her background investigated.

In July, 1948, the plaintiff's first wife divorced him in Wyoming, and, on November 20, 1948, the plaintiff and defendant were married in New York, establishing shortly thereafter their matrimonial domicile in Delaware. Quarrels over money and family matters followed in due course and the plaintiff left the home on July 28, 1950. In October of that year, the defendant commenced an action for separate maintenance against the plaintiff. In the course of discovery proceedings in that action, the plaintiff acquired information which led him to believe that the defendant's Texas divorce decree was invalid and that his marriage to the defendant had been procured by fraud. He, therefore, commenced the instant cause for annulment in the Superior Court.

The foregoing facts are stated to be uncontroverted. With respect, however, to the allegations of fact supporting the asserted grounds for annulment, the contentions of the parties are in direct conflict. The court below, for the purposes of the defendant's motion to dismiss, assumed that the controverted allegations should be considered as having been established by competent evidence. We will do the same, although in fairness to the defendant, it should be stated that she denies the truth of the assertions made by the plaintiff in these respects.

The court below states the factual assertions made by the plaintiff with respect to the Texas divorce decree of the defendant in the following language:

1. That the defendant had abandoned her residence in Texas before filing her petition for divorce.

2. That the ground of cruelty was false and was arrived at by the defendant and Wigley by collusive agreement.

3. That at the hearing on the divorce petition, the defendant lied as to her residence and as to the merits of the case.

The court below states the factual assertions made by the plaintiff with respect to the charge that the defendant induced the plaintiff to marry her by fraud in the following language:

1. That during the period 1938 to 1948, the defendant engaged in meretricious relationships with several men, and that the defendant concealed these facts from the plaintiff.

2. That, during that period of time, the defendant lived on money received by her from men with whom she had meretricious relations, and that the defendant concealed these facts from the plaintiff.

3. That the defendant married the plaintiff for his money and not because she loved him, and that her pre-marital representations of love and affection were false and fraudulent.

4. That the defendant knew her Texas divorce decree was procured by fraud and collusion, and that the defendant concealed these facts from the plaintiff.

The foregoing assumptions of fact raise two questions of law for our decision, viz., (1) May the plaintiff impeach collaterally the Texas decree divorcing the defendant from her first husband? and, (2) May a decree of annulment be entered by the Superior Court of the State of Delaware upon the assumed facts? We will consider these questions in the order in which they are stated.

█ The attempt of the plaintiff to impeach in this proceeding the Texas divorce decree involves the Full Faith and Credit Clause of the Federal Constitution, art 4, § 1. The Supreme Court of the United States, in *Johnson v. Muelberger*, 340 *U. S.* 581, 71 *S. Ct.* 474, 95 *L. Ed.* 552, announced the rule that one state must give full faith and credit to the divorce decree of another state when the parties to the divorce were personally served or entered personal appearances in that proceed-

ing, and must prevent collateral attack upon the decree if the state in which the decree was entered would not permit collateral attack upon it to be made in its courts.

Plaintiff contends that by reason of the more recent case of *Cook v. Cook*, 342 *U. S.* 126, 72 *S. Ct.* 157, the Johnson case is no longer controlling with respect to the credit which must be accorded in this state to the defendant's Texas divorce decree. If the plaintiff is correct in his contention that the Cook case is a limitation upon the rule announced in the Johnson case, that limitation is only that collateral attack upon a wife's out of state divorce can be made by a putative husband when the first husband had not been served personally or entered a personal appearance in the out of state divorce action. This limitation, if it be one, is not applicable in the case before us since the defendant's first husband appeared generally in the divorce action in Texas.

It follows, therefore, that the Texas divorce decree of the defendant must be sustained by this state against collateral attack unless a collateral attack by the plaintiff upon it would be permitted by the courts of Texas. We must determine, therefore, what the law of Texas is with respect to collateral attack upon judgments of Texas courts.

Under the law of Texas, a stranger to the judgment will be permitted to make a collateral attack upon a judgment of a Texas court only if the stranger had a pre-existing right at the time the judgment was entered which has been prejudiced by its entry. *Sanger v. Tramwell*, 66 *Tex.* 361, 1 *S. W.* 378; *Urban v. Bagby, Tex. Com. App.*, 291 *S. W.* 537; *National Loan & Investment Co. v. L. W. Pelphrey & Co., Tex. Civ. App.*, 39 *S. W.* 2d 926. Therefore, since the plaintiff at the time the Texas divorce decree of the defendant was entered had no pre-existing right prejudiced by that decree, Texas would not permit him to attack it collaterally.

Plaintiff concedes that this is the Texas law and that the Texas court entering the divorce decree had jurisdiction of the

subject matter of the suit and of the parties, but contends that the decree is void by reason of fraud and collusion, and that Texas would permit collaterial attack upon it even by a stranger.

The plaintiff contends that the defendant gave perjured testimony in proof of the alleged ground for divorce, i.e., cruelty. If it be assumed that such testimony is fraud, and that the failure of the defendant's first husband to contest the divorce action, knowing it to be false, is collusion, still the fraud and collusion relate not to the jurisdiction of the Texas court but solely to the existence of a bona fide cause of action sought to be asserted in that court. The plaintiff argues, therefore, that fraud and collusion relating solely to the merits of the cause of action sought to be asserted make any decree entered by reason thereof void and subject to collateral attack anywhere. The argument, however, is contrary to the law of Texas. In Texas, collateral attack on a Texas judgment is permitted only when the judgment under attack is absolutely void. *Higgins v. Bordages,* 88 *Tex.* 458, 31 *S. W.* 52; *Wilson v. King, Tex. Civ. App.,* 148 *S. W.* 2d 442; *Johnston v. Stephens, Tex. Civ. App.,* 300 *S.W* 225. And a Texas judgment is absolutely void only when a lack of jurisdiction in the court entering it is disclosed by the record of the judgment, itself. *Litton v. Waters, Tex. Civ. App.,* 161 *S. W.* 2d 1095; *Security Trust Co. v. Lipscomb County,* 142 *Tex.* 572, 180 *S. W.* 2d 151; *Douglas v. State,* 58 *Tex. Cr. R.* 122, 124 *S. W.* 933; *State Mortgage Corporation v. Traylor,* 120 *Tex.* 148, 36 *S. W.* 2d 440. Fraud or collusion not relating directly to the jurisdiction of the court entertaining the action, under the law of Texas, makes a judgment entered in the action voidable and, thus, subject only to direct attack by way of appeal or proceedings in equity. *Hollis v. Hollis, Tex. Civ. App.,* 226 *S. W.* 2d 129; *Bragdon v. Wright, Tex. Civ. App.,* 142 *S. W.* 2d 703; *Uvalde Paving Co. v. Crabb, Tex. Civ. App.,* 7 *S. W.* 2d 678; *DeBeque v. Ligon, Tex. Civ. App.,* 286 *S. W.* 749, and *Ferguson v. Ferguson, Tex. Civ. App.,* 98 *S. W.* 2d 847.

It seems clear, therefore, that under the law of Texas a judgment is void and subject to collateral attack only when the

court entering the judgment lacked jurisdiction over the subject matter or parties and when that lack of jurisdiction appears from the record of the judgment.

Plaintiff argues that the foregoing statement of Texas law is erroneous by reason of two decisions of the Supreme Court of Texas and that, under these decisions, a Texas judgment procured by fraud and collusion relating to the merits of the cause of action is void and not merely voidable. The first of the two cases is *Texas & P. Railway Co. v. Gay*, 86 *Tex.* 571, 26 *S. W.* 599, 25 *L. R. A.* 52. We think that this case does not support the plaintiff's argument. In the Gay case, it appeared that by collusion the Railway Company and the plaintiff in a receivership action obtained the appointment of a receiver for the Railway Company from a federal court in Louisiana, which had no jurisdiction to appoint such a receiver. In subsequent litigation in Texas, a collateral attack upon the Louisiana receivership decree was permitted in order to enable a claimant, whose claim would have been barred had the receiver's appointment been valid, to recover from the Railway Company. It is to be noted, however, that while the Louisiana decree was successfully attacked in the subsequent Texas proceedings, it was clear by reason of certain federal statutes that the Louisiana court was without any jurisdiction over the Railway Company in receivership proceedings. Despite some language in the opinion which, by implication, at least, supports the plaintiff's theory, the case is an instance of a void decree subjected to collateral attack, the voidness of the decree being based directly upon a lack of jurisdiction in the rendering court.

The second of the two cases is *Smith v. Brown*, 3 *Tex.* 360, 49 *Am. Dec.* 748. We think, however, that this case has nothing to do with the problem before us. The court in the Smith case affirmed a judgment dismissing an action on the ground that the action was wholly fictitious. The action was based upon a purported obligation which on its face showed that it was in fact

a wager. The Smith case has no application to the case before us since the divorce action in Texas in which the defendant here was plaintiff was admittedly based upon a valid marriage over which the Texas court had jurisdiction.

The plaintiff also cites *Staedler v. Staedler*, 6 *N. J.* 380, 78 *A.* 2d 896 in support of his argument that fraud and collusion resulting in the entry of a judgment on a perjured cause of action renders the judgment void and subject to collateral attack. We think, however, that the Staedler case is not authority in support of the plaintiff's position. The fraud and collusion considered by the Supreme Court of New Jersey related primarily to the facts upon which a Florida court took jurisdiction of the cause rather than to the merits of the cause of action. As such, the light most favorable to the plaintiff in which this case can be considered is that fraud and collusion relating to the jurisdiction of a court of another state entering a judgment will permit a collateral attack upon the judgment even though the lack of jurisdiction does not appear from the record of the judgment. This, however, does not aid the plaintiff for such is not the law of Texas.

We hold, therefore, that the Texas divorce decree of the defendant may not be attacked collaterally by the plaintiff in Texas and, consequently, must be given full faith and credit in this state. The court below, therefore, was correct in denying the plaintiff's prayer for an annulment under 1935 *Code*, § 3497 (c) on the ground that the defendant at the time of her marriage to plaintiff had a living husband.

We turn now to a consideration of the contention of the plaintiff that he is entitled to an annulment under the provisions of 1935 *Code*, § 3497(d) on the ground that his marriage to the defendant was procured by fraud.

This phase of the cause was argued before us on the theory that since this marriage was contracted and solemnized in the State of New York, we must apply the law of New York relat-

ing to the voidability of marriages by reason of fraud rather than the law of Delaware upon the same subject. Assuming, without expressing any opinion, that there is a difference between the law of New York and Delaware in this respect, we do not think we are faced with the conflict of laws problem posed in the briefs and at the argument.

Plaintiff seeks in the Superior Court of Delaware the affirmative relief of annulment. The jurisdiction of the Superior Court to decree annulments is conferred upon it by statute. It has no inherent jurisdiction in that respect. This being so, it follows that the Superior Court may decree annulments only upon the grounds and to the extent that the statute conferring such jurisdiction upon it authorizes. *Cf. Elzey v. Elzey*, 1 *Houst.* 308; *Cohen v. Cohen*, 3 *Boyce* (26 *Del.*) 361, 84 *A.* 122; *Du Pont v. Du Pont*, 8 *Terry* 229, 87 *A.* 2d 394.

The invocation of statutory jurisdiction over annulment raises the basic question of whether the court upon which annulment jurisdiction has been conferred by statute has the *power* to decree an annulment under the particular circumstances of the case. Only if the asserted ground of invalidity of the marriage is one of the statutory grounds for annulment may the court, the jurisdiction and power of which is measured by the statute, grant the affirmative relief of annulment. *Sirois v. Sirois*, 94 *N. H.* 215, 50 *A.* 2d 88; *Capasso v. Colonna*, 95 *N. J. Eq.* 35, 122 *A.* 378, affirmed 96 *N. J. Eq.* 385, 124 *A.* 760; *Jimenez v. Jimenez*, 93 *N. J. Eq.* 257, 116 *A.* 788; *Mitchell v. Mitchell*, 63 *Misc.* 580, 117 *N. Y. S.* 671; *Levy v. Downing*, 213 *Mass.* 334, 100 *N. E.* 638.

It is, therefore, immaterial in connection with the instant case, whether under the New York law the fraud asserted by the plaintiff against the defendant would make their marriage void as the plaintiff contends, or merely voidable as the defendant contends. We are not concerned with what the status of the marriage is under the law of New York for the reason that the annulment powers of the Superior Court of Delaware are solely those

set forth in the statute. The Superior Court is without any power to decree an annulment unless the facts upon which the petition is based constitute a ground for annulment under the Delaware statute.

Assuming, therefore, that the plaintiff's factual contentions with respect to the alleged fraud by which his marriage to the defendant was procured are true, we must determine whether or not such facts would constitute a ground for the annulment of his marriage by reason of fraud within the meaning of the statute conferring annulment jurisdiction upon the Superior Court.

In *Williams v. Williams*, 2 *W. W. Harr.* (32 *Del.*) 39, 118 *A.* 638, it was held that fraud sufficient to permit the annulment of a marriage under the Delaware statute is not every deception or fraud perpetrated by one prospective spouse upon another but is only a fraud which goes to the very essentials of the marriage relationship. In that case, the fraud was a misrepresentation by the husband of his social and financial position. Such misrepresentations were held not to be fraud within the meaning of the Delaware statute.

In *Doe v. Doe*, 5 *W. W. Harr.* (35 *Del.*) 301, 165 *A.* 156, the fact that at the time of marriage the wife was suffering from a venereal disease unknown to her husband until after the marriage had taken place, was held sufficient to justify annulment on the ground of fraud. The Doe case reasserted the ruling of the Williams case to the effect that no fraud would be sufficient to annul a marriage unless it related to the essentials of the marriage relationship.

In *Morris v. Morris*, 1 *Terry* (40 *Del.*) 480, 13 *A.* 2d 603, the pregnancy of a prospective wife by another than her husband-to-be and the representation made to him that he was the father was said to be sufficient to permit annulment on the ground of fraud. The court stated that the concealment of pregnancy by another prior to marriage went to the essentials of the marriage relationship since the wife, by her prior conduct, had

made it impossible for her to fulfill one of the principal marital obligations—that of bearing her husband's children.

In *Babis v. Babis*, 6 *Terry* 496, 75 *A.* 2d 580, fraudulent representations by the husband to the effect that he loved the wife and desired to establish a permanent marriage relationship and home with her when, in fact, he desired to marry her solely for the purpose of obtaining a preferential entry into the United States as the husband of one of its citizens, was held sufficient to permit annulment of the marriage on the ground of fraud in view of the peculiar circumstances of the case.

In *Morris v. Morris, supra,* the court stated that a false claim of pre-marital chastity by the wife is ordinarily not sufficient to permit annulment of the marriage on the ground of fraud It was also said that pre-marital incontinence did not relate to the essentials of the marriage relationship since it would not necessarily prevent a faithful performance of marital obligations. The court pointed out that persons desiring to marry have a burden to make such investigation of the prior lives of their prospective spouses as they deem fit.

Whatever the rule may be in the State of New York, pre-marital unchastity alone seems not to be a ground for annulment of marriage under the generally accepted view. See Annotation, 82 *A. L. R.* 532. The rule that pre-marital incontinence is not fraud sufficient to annul a marriage is strengthened when, as in the case at bar, the husband, himself, has participated prior to their marriage in the unchaste conduct of his wife. *Lindquist v. Lindquist,* 130 *N. J. Eq.* 11, 20 *A.* 2d 325.

Plaintiff argues earnestly that even though such be the rule with respect to pre-marital unchaste conduct on the part of the wife, a distinction is made when the wife has not only been unchaste but meretricious for money and a "kept woman". However, the general principle to which the State of Delaware has been committed by the decisions of its Superior Court recognizes no difference in degree of unchasteness or, indeed, promiscuity, whether it be for hire or not. 1 *Bishop on Marriage,*

*Divorce and Separation,* § 479; *Rosenberger v. Rosenberger,* 150 *Ky.* 803, 150 *S. W.* 1023; *Linquist v. Linquist, supra.*

Plaintiff argues that we should overrule the decisions of the Superior Court and adopt the rule as to fraud applied in the courts of New York, which he says is more lenient than that followed by the Superior Court. On the question of what the law of New York is, we express no opinion. We decline, however, to overrule the prior decisions of the Superior Court. These decisions extend over a period of time and have become settled principles in our law of annulment. If the rule laid down by these cases is considered to be harsh and outmoded, its change should be urged upon the General Assembly.

The plaintiff, citing *Wemple v. Wemple,* 170 *Minn.* 305, 212 *N. W.* 808, 58 *A. L. R.* 321 and 2 *Schouler, Marriage, Divorce & Domestic Relations,* 6th Ed., § 1142, argues as an additional reason for annulment on the ground of fraud under the Delaware statute that the defendant married the plaintiff for his money and not for love, and that this is fraud going to the essentials of the marriage relationship. Assuming without deciding that the plaintiff is correct in this position as a matter of law, it still would not follow that he would be entitled to an annulment decree in the Superior Court of this state. An examination of the portions of the record to which the plaintiff refers in support of this factual contention discloses that the argument is built almost entirely upon inferences drawn from certain factual admissions made by the defendant. Assuming the inferences drawn by the plaintiff to be justified, still the plaintiff fails because of a deficiency of proof. 1935 *Code,* § 3516, prohibits the granting of a decree for either annulment or divorce unless the right is established by affirmative proof aside from admissions on the part of the defendant. The evidentiary requirement of this section is fatal to the plaintiff's argument in this respect.

We think, therefore, that the plaintiff, under the assumed facts, is not entitled to a decree for annulment on the ground

of fraud and that the court below was correct in denying plaintiff's prayer for annulment under 1935 *Code*, § 3497 (c). So that there will be no doubt, however, concerning the extent of this holding, we point out that we have expressed no opinion concerning the validity or invalidity of this marriage under the law of the State of New York, and of the right of the plaintiff to raise that question in any other proceeding in this state or any other state. The question is not before us.

The plaintiff also seeks a reversal of the Superior Court's final award to the defendant of counsel fees for services rendered by the defendant's counsel in the proceedings below. After the docketing of this appeal, the defendant applied to this court for the allowance of interim counsel fees and expenses in connection with the appeal. We heard argument on this motion and, on March 17, 1952, held that the Superior Court had authority to make an allowance to a defendant wife in an annulment action for counsel fees and expenses, not only in connection with proceedings before that court, but in connection with proceedings before this court as well. *Du Pont v. Du Pont*, 8 *Terry* 229, 87 *A.* 2d 394. We recognize that under some circumstances this court could make such allowances but, for the reason, *inter alia*, that it was not absolutely clear whether or not sufficient findings of fact had been made by the court below to justify the allowance of interim counsel fees to the defendant, we directed the defendant to make her application to the Superior Court, even though this appeal was then pending. In so doing, however, we ruled upon one of the contentions of the plaintiff with regard to the making of such allowance to a wife, viz., the authority of the Superior Court and of this court to make interim and final allowances to a wife for counsel fees. The plaintiff is, therefore, precluded from further arguing that as a matter of law no such allowances may be made.

The plaintiff argues, however, that by reason of availability of funds and of alleged perjury by the defendant in the hearings before the Superior Court, her request for counsel

fees should have been denied. These matters would be of great pertinency if the matter we had before us was the making of an interim allowance, but that is not the case. The cause is about to be ended by this opinion. The result is unfavorable to the plaintiff. The holding in effect is that, as a matter of law, he had no right to institute the action. Under such circumstances, it might be questioned whether the matter is one lying within the discretion of the court, or is a matter of right belonging to the wife.

Ordinarily, a wife who successfully defends her marriage against the husband's attempt to annul it will be made an allowance for her counsel fees and expenses incurred by reason of the husband's suit. 35 *Am. Jur., Marriage,* §§ 70, 71. Whether a victorious wife is entitled to a final allowance in this respect as a matter of right, or solely within the discretion of the court, we do not have to determine. Assuming, without deciding, that the matter is one for the court's discretion, the Superior Court in its discretion has ruled adversely upon the factual contentions made by the plaintiff in this respect. This is made clear from the Superior Court's memorandum of decision dated May 12, 1952 amplifying its decision on the question of allowances contained in its opinion in *Du Pont v. Du Pont,* 83 *A.* 2d 105. The plaintiff has pointed out nothing to us which would justify the conclusion that the Superior Court abused its discretion by making a final allowance to the defendant, again assuming that it was a discretionary matter. Since the plaintiff does not contend that the amount of the allowance is excessive, we think we must affirm the Superior Court's final award to the defendant.

Pursuant to the direction contained in our opinion of March 17, 1952, the defendant made application to the Superior Court for interim counsel fees and expenses in connection with the defense of this appeal. This application has since become in the Superior Court an application for final allowances. The court below has indicated that a hearing will be held to take evidence upon which to base an estimate of the value of counsel's services. We think it entirely proper for the Superior Court to continue

to entertain this application and to make such allowance to the defendant as it thinks proper, consistent with the views expressed in this opinion.

Accordingly, the judgment of the Superior Court dismissing the complaint and making an allowance to the defendant for counsel fees and expenses incurred in the proceedings in that court will be affirmed, reserving, nevertheless, the right of the defendant to pursue her application in the Superior Court for an allowance for counsel fees and expenses incurred in this appeal.

A special mandate may be submitted, subject to the provisions of Rule 14.