Mohler, Admrx., Appellant, *v.* Worley, Admrx.

Argued March 22, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ. (HIRT, J., absent).

*George R. Eves,* for appellant.

*Robert I. Cottom,* with him *Harry R. Matten* and *Matten & Matten,* for appellee.

OPINION BY RHODES, P. J., July 21, 1955:

This appeal is from the refusal of the court below to grant plaintiff's motion for a new trial after a verdict in her favor.

Automobiles operated by Eli G. Mohler and William G. Groff collided on route 222 between Reading and Lancaster on April 28, 1952. Groff was killed in the collision. Mohler sustained minor direct physical injuries. At the time, Mohler was suffering from dementia praecox, a pre-existing mental condition which had no connection with the accident. Subsequently, on September 28, 1952, Mohler was admitted to the Wernersville State Hospital where he died on December 1, 1952, of pneumonia, an independent cause having no relation to the injuries which he may have sustained in the accident. Mohler's widow, as administratrix of his estate, instituted the present action under the Survival Act (Act of April 18, 1949, P. L. 512, Art. VI, §§601, 603, 20 PS §§320.601, 320.603) against Groff's widow, administratrix of Groff's estate, to recover damages to the car and for alleged aggravation of Mohler's pre-existing mental condition. The case was tried before a judge and a jury; the defendant offered no testimony; a verdict was returned for plaintiff in the amount of $400. Plaintiff's motion for a new trial was refused, and judgment was entered on the verdict. On appeal plaintiff alleges the court should have granted her motion for new trial (1) because of inadequacy of the verdict; and (2) because the court erred in its charge as to the measure of damages.

Appellant's medical witness, Dr. J. R. Bower, testified Mohler was suffering from dementia praecox; and the doctor's direct testimony, if credited, was to

the effect that the accident aggravated Mohler's mental condition and caused his confinement in an institution a year or a year and a half before it otherwise would have taken place.[1]  Mohler was employed as a salesman of storm windows, and appellant showed that Mohler's gross commissions for nine months prior to November 22, 1952, amounted to $2,195.52.  He supplied his own car at his own expense; there was no testimony as to his net income.  The court submitted to the jury Mohler's possible loss of commissions, confining it to a period from September 28, 1952, the time of admission to a mental institution, to December 1, 1952, the date of death.

It was stipulated that damage to decedent's car amounted to $300.  In addition, hospital bills of $15 covering emergency treatment and X-rays on the date of the accident were proved.  Mohler consulted Dr. Bower for psychiatric treatment on six occasions.  The charge for three visits subsequent to the accident was $15.  There was also a hospital bill for electric shock treatments, given between September 4, 1952, and September 25, 1952, amounting to $100.  Dr. Bower thought that the accident aggravated Mohler's condition and accelerated the necessity for

---

[1] Dr. Bower also testified: "Q. So, as I understand your testimony, even if he hadn't been involved in this automobile accident this paranoiac break might have occurred from some other cause a month or a few months or a year or three years after the accident? A. That is correct. Q. So that it is exceedingly difficult to determine how much time, if any time, this accident hastened his condition? A. That is correct. There is no yardstick one can scientifically apply, we have no accurate yardstick on that. . . . Q. You have testified that he was a paranoiac from the time you first saw him? A. Yes; he had a condition which probably would have put him in the state hospital at some time or another. Q. He might have exploded at any time? A. That is right."

shock treatments, but testified that these would have been necessary ultimately in any event.

In refusing the motion for a new trial on the ground of inadequacy of the verdict, the court below pointed out that the jury could have properly disregarded the $15 bill for visits to Dr. Bower subsequent to the collision, and the hospital bill of $100 for shock treatments, as unrelated to or not caused by the accident. After deducting the $300 for the car and the $15 hospital bill, there was left a possible $85 for any aggravation of Mohler's mental condition and for loss of earnings. His employer testified that Mohler stopped working on November 22, 1952, and was paid from February 15, 1952, to November 22, 1952, nine days before his death. The trial judge concluded that, while the verdict was meager, it covered all damages admittedly due to the accident, and could not properly be set aside as inadequate. On this phase of the appeal, the order of the court below must be affirmed. The refusal of a new trial sought because of alleged inadequacy of the verdict is a matter peculiarly within the discretion of the trial court, and the appellate court will not reverse unless the verdict is so unreasonable as to bring a conviction that it was influenced by partiality, passion, or prejudice, or by some misconception of the law or evidence in the case. *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150; *Carpenelli v. Scranton Bus Co.,* 350 Pa. 184, 187, 188, 38 A. 2d 44; *Zamojc v. Fisher,* 127 Pa. Superior Ct. 171, 193 A. 315. "If the verdict bears a reasonable resemblance to damages which were proven, it is not the function of this Court to substitute its judgment for that of the jury": *Perzak v. Coulter,* 171 Pa. Superior Ct. 475, 478, 479, 90 A. 2d 256. See, also, *Ewing v. Marsh,* 174 Pa. Superior Ct. 589, 592, 101 A. 2d 391.

The second phase of the appeal relates to appellant's request that the court charge, in substance, that

she was entitled to recover for a loss of wages, if the jury believed the medical testimony that the accident aggravated Mohler's mental condition and accelerated its development and his mental collapse by a period of a year and a half. Appellant contends the trial judge's refusal to so charge when specifically requested to do so was error. Appellant's theory, as stated in her brief, is that ". . . if the accident aggravated the decedent's pre-existing mental condition by putting decedent in a State Hospital a year and one-half in advance of the normal course of his disease, then Mohler's estate, under the Survival Act, is entitled to be compensated for that year and a half both in lost wages and for suffering in the nature of being deprived of the right to be in and to enjoy normal society." The trial judge properly refused to charge as requested; his charge as a whole was proper and the judgment must be affirmed. Appellant's action is under the Survival Act. The distinction between the Wrongful Death Act (Acts of April 15, 1851, P. L. 669, §19, 12 PS §1601, and April 26, 1855, P. L. 309, §1, as amended, 12 PS §1602) and the Survival Act (Act of July 2, 1937, P. L. 2755; repealed and superseded by the Act of April 18, 1949, P. L. 512, §§601, 603, 20 PS §§320.601, 320.603) was set forth in *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A. 2d 659. Referring to actions thereunder, Mr. Justice (now Chief Justice) STERN there stated (page 647 of 344 Pa., page 661 of 26 A. 2d) : "Such actions are entirely dissimilar in nature. The one represents a cause of action unknown to the common law and is for the benefit of certain enumerated relatives of the person killed by another's negligence; the damages recoverable are measured by the pecuniary loss occasioned to *them* through deprivation of the part of the earnings of the deceased which they would have received from him had

he lived. The other is not a new cause of action at all, but merely continues in his personal representatives the right of action which accrued to the deceased at common law because of the tort; the damages recoverable are measured by the pecuniary loss occasioned to *him*, and therefore to *his estate*, by the negligent act which caused his death."

We think it is clear, however, in cases such as the present case, where the injured party dies before trial from *other causes* than defendant's negligent act, damages are limited to the period between the date of injury and the date of death. That this is the applicable rule is indicated in a footnote in the *Pezzulli* case, where, speaking of the Wrongful Death Act, it was said (page 647 of 344 Pa., page 661 of 26 A. 2d) : "If death occurs *from an independent cause* before the trial, and the suit is carried on by the personal representative, the question as to life expectancy disappears; the actual death displaces speculation as to the likely duration of the injured person's life: Littman v. Bell Telephone Co. of Pennsylvania, 315 Pa. 370, 378, 172 A. 687, 690." Such rule, applicable in the present case where appellant's decedent died from causes independent of the negligent act for which suit is brought, is set forth in Restatement, Torts, §924, ch. 47, p. 636: "If the person harmed is alive at the time of trial, ordinarily the opinion of experts as to the probable diminution of the plaintiff's life expectancy as a result of the tort is admissible. If he has died before trial from a cause for which the defendant is not responsible, the damages are limited to the elements of loss arising before his death." Section 926, ch. 47, pp. 644, 645, of the Restatement, Torts, provides: "The damages for a tort, not involving death for which the tortfeasor is responsible, are not affected by the death of either party before or during trial under statutes permitting

the survival or revival of tort actions, except that (a) the death of the injured person limits recovery for damages for loss of earnings, emotional distress, and all other harms, to harms suffered before such death, and (b) the death of the tortfeasor terminates liability for punitive damages." Restatement, Torts, §926, comment a, p. 645, reads in part: "Even where there is harm to the person and the injured person dies, if the defendant's act did not cause the death, or if suit is not brought for the death, the same elements of damage are considered, but the amount of damage is crystallized by death at any time before trial. Damages for loss of earnings, pain, emotional disturbances and other harms are limited to those occurring before death."

We find in other jurisdictions recognition of the rule that, where an injured party dies from an independent cause before trial, damages should be limited to the period between the date of injury and the death. *Atchison, Topeka & Santa Fe Railroad Co. v. Chance*, 57 Kan. 40, 45 P. 60; *Showen v. Metropolitan Street Railway Co.*, 191 Mo. App. 292, 177 S. W. 791.

The trial judge in his charge instructed the jury that appellant could not recover loss of her decedent's wages for a year and a half on the theory the accident accelerated Mohler's condition by such period; that the negligent act did not cause his death; and that the loss of wages could not extend beyond the date of death. It was also made clear in the charge to the jury that appellant could recover such damages to the time of his death as may have been established by the evidence and suffered by decedent as a result of the accident. Thus it was charged that, if the jury accepted appellant's evidence as to the acceleration of Mohler's mental condition, "you have a right and a duty to include in your verdict some compensation and allow-

ance for the shock and nervousness and paranoiac condition accelerated by the accident and suffered by the plaintiff's decedent as a result thereof after the accident." We are of the opinion that the charge, viewed in its entirety, fairly presented to the jury the proper measure of damages in this case, where the negligent act of defendant's decedent was not the cause of the death of appellant's decedent.

Under the circumstances, the court below committed no error in refusing a new trial.

Judgment is affirmed.