Charles C. THOMPSON, Sr., Administrator of the Estate of Charles C. Thompson, Jr., Plaintiff Below, Appellant,

v.

James P. D'ANGELO and Harvey Porter, Defendants Below, Appellees.

Supreme Court of Delaware.

April 29, 1974.

Joseph Donald Craven, Wilmington, for plaintiff below, appellant.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for James P. D'Angelo, defendant below, appellee.

Roger P. Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, for Harvey Porter, defendant below, appellee.

CAREY and DUFFY, JJ., and BROWN, Vice Chancellor, sitting.

BROWN, Vice Chancellor:

Appellant, Charles C. Thompson, Sr., as administrator of the estate of his son, Charles C. Thompson, Jr., seeks a reversal of an order of the Superior Court denying his motion for summary judgment and granting summary judgment to the appellees, James P. D'Angelo and Harvey Porter.[1] Appellees are members of the

1. Appellant has moved to reverse as to Porter because his counsel has failed to submit a brief. Several days after his brief was over-due, counsel notified the Court by letter that Porter would adopt the brief of his co-appellee, D'Angelo, rather than filing a separate

Delaware bar and Porter is a member of the Pennsylvania bar as well. The action against them seeks damages for malpractice based upon allegations of fraud and conflict of interests in their joint representation of Thompson as administrator.

The Court below held that in an action for malpractice the plaintiff has the burden of proving the existence and extent of the injury alleged as well as the fact that the misconduct of the attorney was a proximate cause of the injury. It further found that the appellant Thompson had failed to adequately establish a basis in law for his claim. See Thompson v. D'Angelo, Del.Super., 312 A.2d 639, 640 (1973).

While the situation is not overly complicated, the factual background as well as the position taken by the parties deserves some comment. Charles C. Thompson, Jr., a resident of Delaware, died on March 15, 1969, in an automobile accident which occurred near Chadd's Ford, Pennsylvania. He was unmarried, and his next of kin were his mother and his father, the appellant herein. With him at the time of the accident was Charlotte Yates, a minor of seventeen years, who was also unmarried but who was pregnant. She was injured in the collision.

Some two weeks after the accident, the appellant Thompson retained D'Angelo to bring suit for the wrongful death of his son. Some three weeks after this Thompson also referred Miss Yates to D'Angelo and he agreed to represent her as well in her personal injury claim. Thereafter, on July 31, 1969, over four months after the death of Charles C. Thompson, Jr., a male child was born out of wedlock to Charolotte Yates, which child she named Charles C. Thompson, III based on her assertion that he was the child of the deceased.

On August 20, 1969, appellant, represented by D'Angelo, applied for letters of administration on his son's estate, his stated purpose being "to institute suit for wrongful death". The petition designated his next of kin to be his mother and father. The child was not mentioned. D'Angelo enlisted the services of Porter to file suit in the United States District Court for the Eastern District of Pennsylvania and suit was filed by Porter on January 19, 1970. The named plaintiffs were Charles C. Thompson, Sr. as administrator of his son's estate, Beulah Yates, individually and as parent and natural guardian for her daughter, Charlotte A. Yates, and Charlotte A. Yates, a minor, individually. Although the child was not named as plaintiff, the complaint did contain an allegation that the decedent left surviving him a son, Charles C. Thompson, III.

Thereafter, as the result of negotiations and his interpretation of the Pennsylvania Survival and Wrongful Death Statutes as affected by Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968),[2] Por-

brief. It is not uncommon in this Court for one co-party to rely on the brief of the other unless the Court disapproves. While we do not mean to condone delinquency in giving notice of such intention—for consideration for opposing counsel as well as the Court dictates that notification of such a decision should be given within the bounds of the brief schedule —we do not feel, under the circumstances of this matter, that a reversal by default is necessitated. Instead, we shall base our determination on the merits. The motion of the appellant as to Porter will be denied.

2. In Levy v. Louisiana the United States Supreme Court reversed a decision of the state court which had dismissed a suit for wrongful death brought on behalf of five illegitimate children for the death of their mother. The basis for the dismissal had been that the word "child", as used in the state wrongful death statute, was limited to "legitimate child". A similar interpretation of the word "child" in the Pennsylvania statute had been previously given by the Pennsylvania Supreme Court in Frazier v. Oil Chemical Company, 407 Pa. 78, 179 A.2d 202 (1962) in which a wrongful death action brought on behalf of illegitimate children for the death of their father had likewise been dismissed. In Levy, Justice Douglas stated that illegitimate children nonetheless "are humans, live and have their being" and are thus persons within the Equal Protection Clause of the 14th Amendment. Whether a distinction should have been drawn because the suit in Levy was for the death of a mother

ter negotiated a settlement of the wrongful death action for the sum of $7,000, on the basis that the proceeds would be payable to the child, Charles C. Thompson, III. A separate settlement of the claim of Charolotte A. Yates was also obtained.

On January 19, 1971, Porter filed a petition in the District Court for approval of settlement and compromise. The petition alleged, *inter alia,* that the decedent was survived by an illegitimate son and that the child was entitled to recover under the Pennsylvania Survival and Wrongful Death Statutes, but it also stated, as partial justification for the modest amount of the settlement, that there was "a substantial legal question of the paternity of the minor". This petition was approved by an order entered by the District Court on January 22, 1971. The order directed that the settlement amount, less costs and counsel fees, be paid to Beulah and Charlotte Yates on behalf of the child.

A check for $7,000 was thereupon issued by the insurance carrier for the District Court defendants, but apparently was made payable to the appellant as administrator, not to Mrs. Yates and her daughter on behalf of the child. Porter forwarded the check to D'Angelo who obtained appellant's endorsement. Thereafter, this check was negotiated by counsel, fees deducted, and a check for the balance of $4,400 drawn in favor of Beulah and Charlotte Yates. Appellant and Charlotte Yates came together to D'Angelo's office and Miss Yates was given the check. Together they went to cash it. Miss Yates obtained the endorsement of her mother, negotiated the check and tendered one-half, or $2,200 to the appellant.[3] He refused, claiming that at this point he first became aware that he was not to receive the entire proceeds as administrator. He supports his late awareness of the situation with his assertion that because he is unable to read and write, he

rather than a father, whose paternity might not have been established, is not for us to decide, as appellant seeks, in view of our decision set forth hereafter.

had thus relied on D'Angelo as to anything he signed, and that D'Angelo had never fully explained it to him. D'Angelo denies this by his answer and affidavit.

When appellees learned that a problem existed, Porter referred the matter to yet another Delaware attorney to petition the Court of Chancery to have Charlotte Yates appointed guardian for the property of her child. Appellant obtained the services of his present attorney and intervened, claiming that the proceeds rightfully belonged to him as administrator. The Vice Chancellor ruled, and correctly in our opinion, that the effort of the appellant was an attempt to collaterally attack the order entered by the District Court and, as such, could not be maintained. He suggested that the proper remedy would be to seek relief from the order in the District Court. Claiming financial inability, appellant chose not to do so, nor did he appeal the Vice Chancellor's ruling. Instead he elected to pursue his remedy through this malpractice action in the Superior Court. As indicated previously, the Court below, on the above facts, granted summary judgment against the appellant stating simply, and without going into any detail as to the reasons, that appellant had "failed to establish a specific loss to the estate arising from the conduct of Defendant counsel". 312 A.2d 640.

Appellant Thompson takes the position that he has demonstrated a specific loss in the amount of $7,000 because he brought the action as personal representative on behalf of the estate, the action was settled in favor of the plaintiff, but the funds were diverted through his attorneys' application to the District Court to a nonparty, the illegitimate child, who had no legal standing as his son's heir. In support of this, he makes much of the fact that the settlement check issued by the insurance carrier was made payable to him as administrator de-

3. In view of the distribution directed by the District Court order, we must confess to some curiosity as to why counsel permitted this situation to occur.

spite the language of the District Court order.

Appellees, on the other hand, take the position that the Court below properly denied appellant's motion for summary judgment because the record indicates that there is a genuine dispute as to various material facts (pertinent to the administrator's legal rationale) particularly on the issue of the explanation given to the appellant prior to the settlement of the claim and his knowledge and approval of the settlement in favor of the child. On this point we clearly agree, and the record contains sufficient factual inconsistencies to make any detailed discussion of them unnecessary.

In addition, appellees alleged as affirmative defenses in the Court below (1) that appellant was estopped from bringing the action by virtue of the decision of the Vice Chancellor, (2) that the Vice Chancellor's decision was res judicata as to the claims of malpractice, (3) that the trial court lacked jurisdiction over the subject matter because the fund claimed by appellant was on deposit in the Court of Chancery as a result of the guardianship application and (4) the trial court lacked jurisdiction over the subject matter because of the order of the District Court.

The motion of D'Angelo for summary judgment was based solely on these affirmative defenses, and Porter's motion, which was for dismissal, judgment on the pleadings and/or summary judgment, was also based primarily on these affirmative defenses. Indeed, since appellees admit to a genuine issue as to the factual sequence of events leading up to the District Court order, it would seem that the validity of the decision of the Court below would have to depend on one or more of the affirmative defenses even though it did not say so. In fact, it is the position of appellees here that although the Court below did not predicate its ruling on the Chancery decision, their arguments on this point were fairly presented to it and consequently we may thus affirm the grant of summary judgment in their favor on this basis. See Rhein v. Wark & Company, Del.Supr., 4 Stacey 10, 174 A.2d 132 (1961).

Thus, it seems, appellant is totally dissatisfied with the decision of the Court below, and appellees seek to disassociate themselves with the literal manner in which it was given.

Upon analysis, we feel that although the basis for the decision may not be readily apparent from the language of the opinion, it can be found in part by a resort to the Pennsylvania authorities it relies upon. In Funk v. Buckley & Co., 158 Pa. Super. 586, 45 A.2d 918 (1946) it was held that in an action brought under the Pennsylvania wrongful death statute, although the suit is instituted by the personal representative of the deceased, the beneficiaries of any recovery are the persons designated by the statute and not the estate. In the language of the court at 45 A.2d 921:

"The damages recovered are payable immediately to the dependents and form no part of the assets of the decedent's estate."

In Mohler v. Worley, 179 Pa.Super. 56, 116 A.2d 342 (1955) it was pointed out that the statutory wrongful death action represents a cause unknown at common law and is for the benefit of certain enumerated relatives of the person killed whose damages " 'are measured by the pecuniary loss occasioned to *them* through deprivation of the part of the earnings of the deceased which they would have received from him had he lived.' " 116 A.2d 344. A survival action is contrasted as a continuation of the right of action which accrued to the deceased at common law and which he could have maintained himself but for his death thereafter. Recovery under a survival action is measured by the pecuniary loss occasioned to the deceased himself, and therefore to his estate. 116 A.2d 345.

In the complaint filed in the District Court the appellant, as administrator, al-

leged as his first cause of action a loss on behalf of the illegitimate child under the Pennsylvania wrongful death statute. As a second cause of action he sought recovery for loss to the estate.

Even though the language of the District Court order purports to approve the compromise and settlement under both the Pennsylvania Survial and Wrongful Death Statutes, it nonetheless directed payment of the settlement amount in favor of the child and not the decedent's estate. In view of the difference in the two types of actions as defined by the above Pennsylvania authorities, it would seem that approval of the settlement for the child alone would negate the idea of any damages due to the estate. Approval of payment directly to the child necessarily indicates that the damages recovered "form no part of the assets of the decedent's estate". Funk v. Buckley & Co., *supra.*

■ In reviewing the summary judgment entered against the appellant we may assume malpractice on the part of the defendants. But every malpractice action does carry with it a right to a monetary judgment. It is the law that a malpractice action against an attorney cannot be established in the absence of a showing that his wrongful conduct has deprived his client of something to which he would otherwise have been entitled, Pusey v. Reed, Del. Super., 258 A.2d 460 (1969); 7 Am.Jur.2d 156, Attorneys At Law § 188. Here, the appellant has not shown that he has been deprived of any moneys to which he would have been entitled under the Pennsylvania statutes. The first cause of action asserted in the suit was for the benefit of a dependent and he has not shown any loss to the estate as asserted in the second cause of action. In short, the Court below held that appellant had failed to establish a specific loss to the estate, and we agree.

■ We also note that as long as the order of the District Court stands it is the duty of the Courts of this State to accord it the same force and effect as would be given to it by a Pennsylvania Court. 28 U.S.C.A. § 1738; Hancock National Bank v. Farnum, 176 U.S. 640, 20 S.Ct. 506, 44 L.Ed. 619 (1900). The law of the Pennsylvania decisions, in keeping with the general rule, holds that a judgment, order or decree rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to collateral attack in any other proceeding. Mangold v. Neuman, 371 Pa. 496, 91 A.2d 904 (1952); Moeller v. Washington County, 352 Pa. 640, 44 A.2d 252 (1945); 49 C.J.S. Judgments § 401, p. 792. Moreover, as a general rule, and even where, as here, fraud is alleged as the basis, if a court had jurisdiction, it is not permissible for a party to it to attack its judgment in a collateral proceeding, for, in such case, the judgment would be voidable only, not void. 49 C.J.S. Judgments § 434, p. 859. See also Jeanette Glass Co. v. Indemnity Ins. Co. of North America, 370 Pa. 409, 88 A.2d 407 (1952); Du Pont v. Du Pont, Del.Supr., 8 Terry 231, 90 A.2d 468 (1952), cert. den. 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651.

Appellant has already attempted such a collateral attack in the Chancery matter, but was told that he could not do so. He saw fit not to question that decision by appeal, but rather chose to institute the malpractice action in a sister court on the same theory, namely, that because of the alleged wrongful conduct of his attorneys, the District Court was induced to enter an erroneous order. A prerequisite to his success in Chancery was to have the District Court order declared improper if he was to be entitled to the settlement funds as against the child. Likewise, since the existing District Court order prevents proof of any loss to the estate at this point, a prerequisite to his success in this action is to also have the order declared improper. That he may not do so by collateral attack in the courts of this State has already been decided by the Vice Chancellor.

■ The defense of collateral estoppel has been stated to be a refinement of the

doctrine of res judicata. Tyndall v. Tyndall, Del.Supr., 238 A.2d 343 (1968). Basically, where an element essential to the relief sought has been litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action. "In such a situation, a party is estopped from relitigating the issue again in the subsequent case." Tyndall v. Tyndall, *supra*, at 238 A.2d 346.

■ The existence of the Vice Chancellor's decision on the issue of collateral attack is not in dispute. Appellees moved for summary judgment on the basis of his decision, among other things. It was before the Court below. The decision of the Court below held that appellant had demonstrated no loss to the estate. It necessarily follows that he cannot do so without attacking the District Court order. He is estopped by the decision of the Vice Chancellor on that point. Accordingly, the grant of summary judgment in favor of appellees was proper.

Affirmed.