## Baird v. Wheatland Tube Company

*Charles F. Gilchrest,* for plaintiffs.

*William J. McDonnell,* for defendant Wheatland Tube Company.

*Louis Anstandig,* for additional defendant ADM Systems.

*Marcia H. Haller,* for additional defendant Butler Manufacturing Company.

FORNELLI, *J.,* June 17, 1991—This is a personal injury negligence action by a husband and wife seeking damages for the husband's work-related injuries and the wife's loss of consortium. Presently before the court is the motion in limine of additional

defendant ADM Systems Inc. For the reasons set forth below, the motion will be denied with reservation.

On June 25, 1984, Wheatland Tube Company[1] issued a purchase order to ADM for the installation of a new pitched roof over a deteriorated flat roof on the O'Donnell Building in Wheatland Tube's facility. ADM is an authorized representative of Butler Manufacturing Company, the designer of the new roof. ADM subcontracted the installation of the new roof to Design Erectors Inc.

Plaintiffs' decedent Dale R. Baird was a union ironworker employed by Design Erectors. On September 6, 1984, after working on the O'Donnell roof for about two weeks, Dale Baird fell through a deteriorated portion of the roof onto the floor below, injuring his left foot. At the time of the accident, Dale Baird was married to plaintiffs' decedent Kathy A. Baird.

On March 7, 1986, Dale and Kathy Baird filed their complaint in this action seeking damages from Wheatland Tube for personal injury and loss of consortium on the basis of Wheatland Tube's alleged negligence in failing to discover the weakened area of the old roof, failing to warn workers of the dangerous condition and failing to remedy it. ADM and Butler Manufacturing were subsequently joined as additional defendants.

On May 1, 1987, Dale and Kathy Baird were divorced.

---

1. Named as defendants in this action are Wheatland Tube Co. and Wheatland Steel Products Co., related business entities which, for the purpose of the matter now under consideration, need not be distinguished. In this opinion, the designation "Wheatland Tube" may refer to either or both.

On July 8, 1987, Kathy Baird shot and killed Dale Baird and then she killed herself. Their estates were subsequently substituted as plaintiffs in this action.[2]

This motion in limine was brought pursuant to this court's order of December 27, 1990, following pre-trial conference, which provided for preliminary determination of the extent and nature of plaintiffs' damages.[3] By this motion, ADM seeks prohibition of the introduction by anyone at trial of evidence regarding elements of loss or damages arising after the death of Dale and Kathy Baird. In particular, ADM seeks preclusion of any evidence that plaintiffs' deaths resulted in any way from the September 6, 1984, accident[4] and any evidence of prospective earnings on the basis of life expectancy.

ADM argues that because Dale Baird was shot and killed by Kathy Baird, his death was due to an unrelated cause rather than the result of defendants' negligence. Addressing the admissibility of evidence in general, the Pennsylvania Supreme Court has stated:

"It is well established that the fundamental con-sideration in determining the admissibility of evi-dence is whether the proffered evidence is relevant

2. The substitution was made in accordance with 20 Pa.C.S. §3372.

3. That order also provided that issues regarding the construction of an indemnity agreement and whether Dale Baird was a statutory employee of any of defendants are to be determined at trial. There were no requests for stipulations.

4. The parties did not specifically brief the issue regard-ing the admissibility of evidence that plaintiffs' deaths were in any way related to the fall of Dale Baird on September 6, 1984. The issue was, however, mentioned at oral argument. Since the order of December 27, 1990, provided for pretrial determi-nation of "the issue as to the extent of damages and the nature of the damages," this opinion and order will address the merits and dispose of the question regarding the admissibility of evidence pertaining to the cause of plaintiffs' deaths.

to the fact sought to be proved. Evidence is relevant if it tends to make a fact at issue more or less probable." *Martin v. Soblotney*, 502 Pa. 418, 422, 466 A.2d 1022, 1024 (1983). Irrelevant evidence is inadmissible. *Helmig v. Rockwell Mfg. Co.*, 389 Pa. 21, 26, 131 A.2d 622, 625 (1957). Moreover, "[a] trial court may properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury." *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa. Super. 14, 22, 473 A.2d 584, 588 (1988).

"In a personal injury case, the plaintiff must prove the existence of a causal relationship between the injury complained of and the alleged negligent act to be entitled to recover for the injury." *Lattanze v. Silverstrini*, 302 Pa. Super. 217, 223, 448 A.2d 605, 608 (1982), citing *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). In the instant case, there being no obvious causal relationship between the accident of September 6, 1984, and plaintiffs' deaths by murder-suicide almost three years later, evidence relating to the deaths is potentially confusing or misleading, if not prejudicial. Accordingly, such evidence will not be admitted at trial unless a sufficiently probative causal relationship between the accident and the deaths is established. Of course, the date and fact that the plaintiffs are deceased are admissible.

ADM further asserts that plaintiffs' damages are crystallized at the time of death and, in particular, that plaintiffs are not entitled to damages for loss of earning capacity after the death of Dale Baird. In support of this position, ADM cites *Chappell v. Pittsburgh & West Virginia Railway Co.*, 402 Pa. 646, 168 A.2d 330 (1961); *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659 (1942); *Mohler v. Worley*,

179 Pa. Super. 56, 116 A.2d 342 (1955); and Restatement (Second) of Torts §926, comment a.

Plaintiffs concede that older cases, such as *Chappell, Mohler* and *Pezzulli,* hold that damages for loss of earning power are cut off by death resulting from a superseding, intervening cause. Nevertheless, plaintiff argues that modern cases point to a different conclusion: Entitlement to loss of earning potential throughout the life expectancy of the plaintiff at the time the cause of action arose. The following cases are cited by plaintiffs in support of this contention: *Incollingo v. Ewing,* 444 Pa. 263, 299, 282 A.2d 206, 225 (1971) (opinion and opinion on reargument of measure of damages issue); *Krock v. Chroust,* 330 Pa. Super. 108, 478 A.2d 1376 (1984); *Heffner v. Allstate Insurance Co.,* 265 Pa. Super. 181, 401 A.2d 1160 (1979), *aff'd sub nom. Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980).

ADM contends that the cases relied on by plaintiffs are inapposite because they all involve death related to the injury which gave rise to the cause of action. Plaintiffs counter that the language of the cases on which they rely indicate that damages survive death in *all* survival actions and that defendants should not be allowed to reap a windfall as a result of the untimely death of plaintiffs.

In *Incollingo,* the Pennsylvania Supreme Court clearly distinguished two types of survival situations: The survival of a suit or proceeding and the survival of a cause of action. *Incollingo,* 444 Pa. at 304, 282 A.2d at 227. Finding that "the proper measure of damages in each situation has been left to judicial decision," *id.,* the *Incollingo* court was confronted with different judicially developed measures of damages for the two survival situations. *Id.* at 305-06, 282 A.2d at 228. The court concluded that

the same measure of damages should apply in both situations. *Id.* at 306-07, 282 A.2d at 228. Thus, the Supreme Court, in *Incollingo,* specifically overruled its previous holding in *Radobersky v. Imperial Volunteer Fire Dept.,* 368 Pa. 235, 81 A.2d 865 (1951), "that the proper measure of damages in survival of suit cases is decedent's projected gross earnings," and held that in both survival of suit and survival of cause of action cases, as set forth in *Murray v. Philadelphia Transportation Co.,* 359 Pa. 69, 58 A.2d 323 (1948), "[D]amages are properly to be measured by decedent's pain and suffering and loss of gross earning power from the date of injury until death, and loss of earning power less personal maintenance expenses from the time of death through decedent's estimated working lifespan." *Incollingo,* 444 Pa. at 309, 282 A.2d at 229.

In *Chappell, supra,* the Pennsylvania Supreme Court considered a jury charge given in a survival of suit action and determined: "If . . . death results from a condition unconnected with the accident, attention must be given in the charge to the rule that, in such instance, the death ends the period of damages." *Chappell,* 402 Pa. at 650, 168 A.2d at 332, citing, inter alia, *Pezzulli, supra, Mohler, supra,* and Restatement (Second) of Torts §§924, 926 and comment a. The *Chappell* court also relied on *Radobersky* in concluding that, because different measures of damages apply in survival of suit and survival of cause of action cases, "[t]he causation of death is crucial" in determining when the period of damages is terminated. *Id.* at 649-50, 168 A.2d at 332. Thus, to the extent that *Chappell,* in following *Radobersky,* concluded that different measures of damages apply in the two survival situations, then *Chappell* has been negated by *Incollingo.* Nevertheless, *Incollingo* was concerned with determining

whether post-death damages were to be measured by gross or net earning capacity and did not address the question of whether damages for lost earning capacity are crystallized at the time of an unrelated death before trial. Both *Incollingo* and *Radobersky* involved pretrial death allegedly the result of the injury sued upon. *Incollingo,* 444 Pa. at 271, 282 A.2d at 212; *Radobersky,* 368 Pa. at 241, 81 A.2d at 868. Thus, because of their different factual situations and focuses of inquiry, the determination of *Chappell* that unrelated pretrial death terminates the period of damages was not implicitly overruled by *Incollingo.* This conclusion is reinforced by the post-*Incollingo* decision in *Welsh v. Boyles,* 67 D.&C. 2d 390 (1974), in which the court stated:

"Where a defendant's act did not cause the death, as here, or if suit is not brought for the death, the same elements of damages are considered. The amount of damages, however, is crystallized by the death and are limited to those occurring before death: *Chappell v. Pitts. & W. Va. Rwy. Co.,* 402 Pa. 646, [26 A.2d 659] (1961); *Pezzulli v. D'Ambrosia,* 344 Pa. 643, [168 A.2d 330] (1942); *Mohler v. Worley,* 179 Pa. Super. 56, [116 A.2d 342] (1955)." *Id.* at 392-93.

*Chappell* is dispositive of the issue presented by the motion in limine now before this court. Accordingly, any evidence of prospective earnings on the basis of life expectancy will be inadmissible at trial unless plaintiff can demonstrate a legally cognizable causal relation between Dale Baird's fall from the roof of the O'Donnell Building on September 6, 1984, and the subsequent deaths of the plaintiffs.

Hence, this

## ORDER

And now, June 17, 1991, the motion in limine of additional defendant ADM Systems is granted, unless prior to trial or at side bar plaintiffs can demonstrate a legally cognizable causal connection between the accident of September 6, 1984, and plaintiffs' deaths.